FILED
CHARLOTTE, NC

JUL 19 2022

US DISTRICT COURT
WESTERN DISTRICT OF NC

Glenn S. Millsaps, Jr.,
Pro Per
3210 Calumet Dr.-A
Raleigh, N.C. 27610
919-594-9195
email: glennmillsaps@gmail.com

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| Glenn S. Millsaps, Jr.<br><br>        Plaintiff<br><br>vs.<br><br>Iredell County District Attorney's Office, et al, | Case No. 5:22-cv-95-KDB<br><br><br><br>**COMPLAINT** |
|---|---|

## COMPLAINT

### Jury Demand

1.      This action seeks money damages because of a county deputy sheriff's arrest brought on by a First Amendment Violation when an employee of the Iredell County District Attorney's Office demanded Plaintiff to leave the premises where he unsuccessfully sought to have a seat belt violation hearing rescheduled. Plaintiff alleges that all of the Defendants ( including private actors) acted under the color of state law and violated Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States. Plaintiff also brings state law claims pursuant to the Court's supplemental jurisdiction.

1

**Jurisdiction**

2.     This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. § § 1331 and 1343. The Court has supplemental jurisdiction over Plaintiff's state law claims, under 28 U.S.C. § 1367

3.     Venue in the United States District Court for the Western District of North Carolina is proper pursuant to 28 U.S.C. § 1391.

**Parties**

4.     Plaintiff Glenn Sexton Millsaps, Jr., is an individual who resides at 3210 Calumet Dr.-A Raleigh, N.C. The events discussed in this complaint occurred when Plaintiff resided in Statesville, N.C.

5.     Defendant the Iredell County District Attorney's Office is an office funded and operated by the State of North Carolina and acted in concert with other Defendants. At all time relevant hereto the Iredell County District Attorney's Office acted in concert with other Defendants and under the color of state law.

6.     Defendant Kathleen Burris is an employee of the Iredell County District Attorney's Office. At all times mentioned herein, she acted in her official capacity and individually. She also acted on her own and at the direction of the Iredell County District Attorney's Office and in concert with other Defendants. At all time relevant hereto Kathleen Burris acted in concert with other Defendants and under the color of state law.

7.     Defendant Sara Kirkland is an elected official of the Iredell County District Attorney's Office. At all times mentioned herein, she acted in her official capacity and individually. At all times mentioned herein, she acted in her official capacity and individually. She also acted on her own and at the direction of other Defendants.  At all time relevant hereto Sara Kirkland acted in concert with other Defendants and under the color of state law.

8.     Defendant Adam Dillard is an attorney employed by the Iredell County Sheriff's Office. At all times mentioned herein, he also acted in his official capacity and individually. He also acted on his own and at the direction of other Defendants. At all time relevant hereto Adam Dillard acted in concert with other Defendants and under the color of state law.

9.     Defendant Iredell County Clerk of Superior Office is the local government unit for which other Defendants worked and acted in concert with at all time relevant hereto.

10.    Defendant Jim Nixon is an elected official of the Iredell County Clerk of Superior Court for which other Defendants worked and acted in concert with at all time relevant hereto. At all time relevant hereto Jim Nixon acted in concert with other Defendants and under the color of state law.

11.    Defendants unknown Defendants who are employed by the Iredell County Clerk of Superior Court acted in concert with other Defendants employed by the Iredell County District Attorney's Office and other Defendants at all time relevant hereto. At all time relevant hereto unknown Defendants acted in concert with other Defendants and under the color of state law.

12.    Defendant Regina Mahoney is an attorney with Iredell County District Attorney's Office. At all times mentioned herein, she acted in her official capacity and individually. She also acted on her own and at the direction of members of the Iredell County District Attorney's Office and in concert with other Defendants. At all time relevant hereto Regina Mahoney acted in concert with other Defendants and under the color of state law.

13.    Defendant Unknown Employees of the District Attorney's Iredell County work for the Iredell County District Attorney's Office. At all times mentioned herein, unknown employees acted in their official capacity and individually. These unknown employees also acted on their own and at the direction of the Iredell County District Attorney's Office and in concert with other Defendants. At all time relevant hereto unknown employees of the District Attorney's Office acted in concert with other Defendants and under the color of state law.

14.     Defendant Wilson Security Services is a company principally engaged in the business of security services and has its principal place of business in Stateville, North Carolina. It acted in concert with other Defendants in the wrongful arrest of Plaintiff.  At all time relevant hereto Wilson Security Services acted in concert with other Defendants and under the color of state law.

15.     Defendant Danny  Liles is an employee of the Wilson Security Company and the company is principally engaged in the business of security services and has its principal place of business in Stateville, North Carolina. Danny Liles acted in concert with other Defendants in the wrongful arrest of Plaintiff and the destruction of evidence. At all time relevant hereto Wilson Security Services acted in concert with other Defendants and under the color of state law.

16.     Defendant Patsy Allen is an employee of the Wilson Security Company and the company is principally engaged in the business of security services and has its principal place of business in Stateville, North Carolina. Patsy Allen acted in concert with other Defendants in the wrongful arrest of Plaintiff and the destruction of  evidence. At all time relevant hereto Wilson Security Services acted in concert with other Defendants and under the color of state law.

17.     Defendant Iredell County is the local government unit for which other Defendants worked and acted in concert with at all time relevant hereto.

18.     Defendant Iredell County Sheriff's Office is the local government unit for which other Defendants worked and acted in concert with other Defendants and at all time relevant hereto.

19.     Defendant Deputy Ron Hillard is a deputy employed by the Iredell County Sheriff's Office. At all times mentioned herein, he also acted in his official capacity and individually. He also acted on his own and at the direction of other Defendants. At all time relevant hereto Ron Hillard acted in concert with other Defendants and under the color of state law.

4

20.     Defendant Sheriff Darren Campbell is an elected official employed by the Iredell County Sheriff's Office. At all times mentioned herein, he also acted in his official capacity and individually. He also acted on his own and at the direction of other Defendants.  At all time relevant hereto Darren Campbell acted in concert with other Defendants and under the color of state law.

21.     Defendant City of Statesville is the local government unit for which other Defendants worked and acted in concert with at all time relevant hereto.

22.     Defendant Statesville Police Department is the local government unit for which other Defendants worked and acted in concert with at all time relevant hereto.

23.     Defendant Officer K. Johnson is currently a reserve police officer. At the time of the event Officer Johnson was a full time employee of the Statesville Police Department.  At all times mentioned herein, he also acted in his official capacity and individually. He also acted on his own and at the direction of other Defendants. At all time relevant hereto Officer K. Johnson  acted in concert with other Defendants and under the color of state law.

24.     Defendant Captain Tom Souther is currently employed by the Statesville Police Department.  At all times mentioned herein, he also acted in his official capacity and individually. He also acted on his own and at the direction of other Defendants.  At all time relevant hereto Captain Tom Souther acted in concert with other Defendants and under the color of state law.

25.     Defendant Unknown Employees of the Statesville Police Department are employed by the Statesville Police Department. At all times mentioned herein, Unknown Employees of the Statesville Police Department also acted in their official capacity and individually. They also acted on their own and at the direction of other Defendants.  At all time relevant hereto these unknown Defendants acted in concert with other Defendants and under the color of state law.

## Facts

26.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

27.     On or about July 17, 2019, Plaintiff called the Iredell County Clerk of Superior Court about rescheduling a hearing for a seatbelt ticket. Plaintiff missed a scheduled hearing due to a physical injury. An unknown representative told Plaintiff he could not reschedule the hearing because there was a 24 hour notice to reschedule.

28.     Plaintiff was that if he did not appear he would have 20 days to reschedule the hearing and to do so at the District Attorney's office.

29.     Kathleen Burris (an employee of the DA's Office) told Plaintiff if he did not show up he would be entered as call-and-fail and would have to pay the fine.

30.     Ms. Burris asked Plaintiff if he was an attorney. Plaintiff told Burris he is not required to be an attorney. Burris told Plaintiff, among other things, to handle the problem at the Clerk's Office and hung up the phone.

31.     Plaintiff then called the Administrative Office of the Court in Raleigh N.C. They also advised Plaintiff to reschedule the traffic violation through the District Attorney's Office if Plaintiff was representing himself. This information was on their website https://www.nccourts.gov/help-topics/traffic-and-vehicle/traffic-violations.

32.     Believing Ms. Burris had made a mistake, on or about July 19, 2019, Plaintiff went to the District Attorney's Office to reschedule a hearing for the traffic violation. On this particular day Plaintiff was dressed in blue jeans and a tee shirt.

33..    Kathleen Burris told Plaintiff because he is not an attorney he was required to either pay the fine or hire an attorney. Plaintiff told Burris he had a right to represent himself without an attorney.  Plaintiff asked to speak to a supervisor. Burris told Plaintiff if did not leave she would call security.

34.     Wilson's security officer opened the lobby door and told Plaintiff to step into the hallway. There the security officer told Plaintiff to return the following week.

35.     Plaintiff believed he could return to the DA's office and was not banned.

36.     On July 24, 2019, at approximately 0800, Plaintiff returned to the District Attorney's Office.

37.     Plaintiff was dressed in a dark colored suit and tie with a white shirt and his briefcase.

38.     Before clearing Wilson Security Guard Patsy Allen asked if Plaintiff is an attorney.

39.     Patsy Allen was responsible for ensuring Plaintiff did not introduce any contraband into the building.

40.     Patsy Allen asked Plaintiff was he an attorney. Plaintiff advised Allen he was not an attorney.

41.     As a result of Patsy Allen's decision Plaintiff was permitted to enter into the building and visit the District Attorney Office.

42.     After Plaintiff cleared security he entered into the District Attorney's Office and spoke with Kathleen Buriss about rescheduling.  Burris asked Plaintiff are you an attorney.

43.     Plaintiff reached to hand Burriss a motion to reschedule the traffic ticket. Burris did not take it. Plaintiff told Burris he was permitted to speak to a prosecutor about rescheduling his traffic ticket.

44.     Plaintiff requested to speak with a supervisor and Burris refused and called Wilson Security.

45.     Burris told Plaintiff that she had been instructed to call the police if Plaintiff returned.

46.     At some point Burris told an Attorney not to help Plaintiff.

47.     Plaintiff left the DA's office and went to the Justice Hall annex lobby which is just outside the DA's office and approached Security Guard Danny Liles. There Plaintiff told Liles he was in the DA's office to reschedule a call and fail and that he needed to deliver a motion.

48.     Liles asks the Defendant if he is an attorney. After a short discussion with Liles, Plaintiff reentered the DA's office. Liles followed Plaintiff and grabbed him by his arm. Plaintiff told Liles not to touch him.

49.     Plaintiff told Liles that he is not required to be an attorney and that he is violating his rights by not allowing him to speak with a member of the DA's Office.

50.     Danny Liles told Plaintiff that he needed to leave. Plaintiff repeated that he needed to speak with a member of the DA's office about rescheduling and the DA's office should have a process for non-Attorney's.

51.     Liles repeated to Plaintiff that if he is not an attorney he needed to leave and if he did not he would call the Sheriff.

52.     Plaintiff told Liles to get a Sheriff's Deputy.  Plaintiff stepped into the hallway of the Justice Annex building while the door to the DA's Office was open behind him.

53.     Plaintiff heard Liles tell Patsy Allen to get Deputy Hillard.

54.     Within a minute Plaintiff saw a Deputy Ron Hillard exit CourtRoom C. Hillard was dressed in uniform.  Plaintiff observed Hillard walk toward the door as Plaintiff and Danny Liles were standing in the open door of the DA's Office.

55.     At that point, Deputy Hillard asks Plaintiff what is going on. Plaintiff stated he was there to reschedule a call and fall for a traffic ticket.

56.     Hillard asked Plaintiff if he was an attorney. Plaintiff told Hillard he is not required to be an attorney to speak with a prosecutor if he was representing himself.

57.     Hillard asked Plaintiff to step towards him,( in the Justice Hall Annex) where they had a conversation for approximately two minutes. (This is one of many parts that have been edited from the video)

58.     During the conversation Plaintiff told Hillard he was there several days earlier on July 19, 2019 to reschedule a call and fail for a traffic citation.

59.     Hillard stated to Plaintiff weren't you told to leave last week.

60.     Plaintiff told Hillard he was told to leave by Kathleen Burris last week but was told to return sometime during the week of a security officer.

61.     At some point, Hillard asked the Plaintiff if he was an attorney. Plaintiff told Hillard he had a right to represent himself and have the traffic ticket rescheduled before 20 days.

62.     Hillard asked Plaintiff what day his hearing was scheduled. Plaintiff told Hillard the hearing was scheduled for the week prior on July 17, 2019. Hillard asks Plaintiff if he is going to hire an attorney.  Plaintiff told Hillard that he is violating his right to represent himself and not permitting him would violate his constitutional rights to speak to a member of the DA's Office.

63.     Plaintiff told Hillard that the Clerk's Office and the Administrative Office of the Courts in Raleigh stated he had to speak with a prosecutor to reschedule the hearing for the traffic citation.

64.     Hillard asked Plaintiff "were you asked to leave". Plaintiff responded he needed to file a motion to reschedule.

65.     Hillard told Plaintiff if he did not leave he would be placed under arrest.

66.     Plaintiff told Hillard that he had not witnessed any crime to make an arrest.

9

67.     Hillard had not spoken to Kathlleen Burris nor had Hillard witnessed why he was placing Plaintiff under arrest. Prior to Hilliards contact with Plaintiff he had been inside a courtroom attending other constituents.

68.     When Plaintiff said he needed to reschedule a hearing, Hillard stated he had hear enough and told Plaintiff to turn around and place his hands behind his back.

69.     Plaintiff was handcuffed by Hillard.  (Note Plaintiff was not in handcuffs during the initial conversation with Hillard. Discussed later)

70.     When Plaintiff was handcuffed he immediately noticed the handcuffs were not  positioned correctly and were not placed on his wrist properly.

71.     Plaintiff's left thumb was pointed inward and his right thumb was pointed outward, causing the handcuffs to place hard pressure on the knuckle of each wrist. Plaintiff told Hillard it is standard to place both thumbs either inward or outward.

72.     Plaintiff asked Hillard to use two sets of handcuffs because he had an injured left shoulder due to military service.

73.     Plaintiff told Hillard the handcuffs are positioned wrong and asked Hillard to place them on properly. Hillard responded, Boy I've been doing this longer than you've been living, don't tell me how to do my job.

74.     Plaintiff told Hillard to place the handcuffs on properly and to double lock the handcuffs. Hillard told Plaintiff to stop moving around or he would find his damn face on the ground.

75.     Hillard consistently referred to the Plaintiff as a boy.

76.     Plaintiff repeatedly told Hillard the handcuffs were too tight and are not on him correctly.

77.     Plaintiff told Hillard that he is a disabled veteran and his left shoulder has nerve damage.

10

78.     Plaintiff told Hillard the way handcuffs are positioned are causing his hands to tingle. Plaintiff told Hillard his left arm is twisted and is falling asleep.

79.     Moments later several other Sheriff's deputies arrived to assist Hillard.

80.     Plaintiff ask several of the deputy's to loosen the handcuffs and double lock them.  They ignored Plaintiff. Plaintiff continued to complain about the handcuffs.

81.     Several deputies looked at the handcuffs and moved the handcuffs around on Plaintiff's wrist causing them to get tighter. Plaintiff asked the deputies to loosen the handcuffs.

82.     After Plaintiff was handcuffed Deputy Hillard went inside to speak with Ms. Burris. Hillards wrote a report indicating he spoke to Burris about the event to determine his decision of arrest. The video shows Hillard entering the DA's office approximately 2 two minutes later after Plaintiff is in handcuffs.

83.     Plaintiff told deputies his left arm had fallen completely asleep.

84.     Still in handcuffs approximately 20 minutes later Plaintiff was escorted outside toward a Statesville Police Department patrol unit.

85.     While Plaintiff was being escorted to the patrol unit he asked an unknown deputy again to loosen the tight handcuffs because his left arm was in pain. The unknown deputy responded this will all be over soon enough.

86.     As Plaintiff was standing and waiting Plaintiff noticed Deputy Hillard leaning into the window of the patrol unit and laughing during a conversation with Officer K. Johnson.

87.     After several minutes the unknown deputy placed Plaintiff in the back of the patrol unit.

88.     Officer Johnson did not inspect the handcuffs prior to Plaintiff being put in the patrol unit.

89.     Department policy required Officer Johnson to inspect the handcuffs for safety prior to Plaintiff being placed in the patrol unit.

90.     When Plaintiff sat down in the patrol unit the handcuffs clinched down tighter on Plaintiff's wrist.

91.     Plaintiff yelled out loud for Officer Johnson to loosen the handcuffs. Plaintiff weighed approximately 210 pounds at the time of the arrest.

92.     After Plaintiff yelled loudly in extreme pain, Officer Johnson exited the patrol unit and opened the passenger side rear door and took Plaintiff out of the patrol unit.

93.     Officer Johnson loosened the handcuffs but did not change the position of Plaintiff's wrist to an inward or outward.

94.     Officer Johnson stated in a case summary report that Deputy Hillard told him the handcuffs were double locked.

95.     Deputy Hillard testified he did not double lock the handcuffs.

96.     Officer Jonhson then made radio contact with dispatch. This took several minutes. Plaintiff noticed Officer Johnson was confused about the charge of trespassing.

97.     Officer Johnson inquired about whether Plaintiff was on a ban list.

98.     While waiting Plaintiff asks Officer Johnson if his dashboard camera is activated. Officer Johsnon responded it was. Plaintiff asked Officer Johnson if his body camera was activated. Officer Johnson stated it was.

99.     Officer Johnson charged Plaintiff with second degree trespassing. (But later claimed during two separate trials he was not the arresting officer)

100.    When Plaintiff reached his home he noticed his skin was torn around both his wrist and blood stains on the wrist collars of his white shirt.  Plaintiff treated the wounds with home care products.

101. Plaintiff hired Attorney Michael Littlejohn to have the traffic citation to be rescheduled.

102. On or about August 7, 2019, Attorney Littlejohnson successfully had Plaintiffs name added to the calendar with a "Request to Add Case to Calendar" form which was provided to him by a member of the District Attorney's Office.

103. This "Request to Add Case to Calendar" form was not provided to Plaintiff on July 19 or July 24.

104. The District Attorney's Office allowed Plaintiff's case to be rescheduled on the case calendar because Littlejohn is an attorney.

105. On or about August 23, 2019 Plaintiff made public records for body camera and dash camera footage.

106. Captain Souther responded to Plaintiff that neither footage existed.

107. Plaintiff was told by several police officers of the Statesville Police Department that officers are required to activate these devices when dealing with the public when arrests are made.

108. The body cam and dash cam request included a request for all policy and procedures for use on body cam and dash cameras. To date those records have not been disclosed.

109. On or about August 28, 2019, Captain Tom Souther responded to a public records request "There is no body cam footage located for this event as the Officer did not turn his on. There is no patrol car video footage on this event…" Plaintiff discovered that the policy of the Statesville Police Department and surrounding police agencies is to activate both the dash camera and body camera when an arrest is made.

**State Statute required the pleading to be dismissed before it went to trial**

110.   On November 5, 2019 Attorney Littlejohn made a motion that the case should be dismissed on the grounds that the pleading was defective. State law required the pleading to be dismissed if the District Attorney had not amended the pleading prior to trial.

111.   Deputy Hillard's arrest was not supported by probable cause because he did not witness the trespass which required Hillard to witness yelling, screaming or other disorderly conduct.

### Plaintiff did not know Brady evidence existed, until trial

112.   On or about November 5, 2019 Plaintiff was found guilty of second degree trespassing and fined $75.00. Plaintiff appealed. The bench trial proceeding  was not recorded. Just prior to the bench trial hearing Plaintiffs attorney was given written statements of Deputy Ron Hillard and Kathleen Burris.

113.   During the bench trial Danny Liles and Deputy Hillard both testified that Plaintiff had "one foot in the door" and other "foot out of the door" of the DA's lobby when Hillard existed CourtRoom C. No video was presented during the trial.

114.   Plaintiff did not have a foot inside the door of the DA's lobby when Deputy Hillard approached him.

115.   Hillard's written report states that the door to the lobby was open when he left courtroom c. The video depicts the door to the lobby being closed.

116.   Hillard stated during the bench trial that he wrote his report the night he left his shift.

117.   On November 5, 2019, Kathleen Burris testified under oath in a non-recorded proceeding that she saw  Deputy Hillard speaking to Plaintiff in the Hallway of the Annex building prior to Plaintiff being put in handcuffs.
Kathleen Burris' written report stated "At this point, the Defendant was close to pushing security guard Danny out of the way to re-enter the DA's lobby."

118.   The video footage does not show Plaintiff in the annex hallway with Danny Liles.

119.   Hillard testified that when he left CourtRoom C that Plaintiff was standing in the doorway of the DA's lobby with Danny Liles in front of him. (Hillard's testimony on this fact changed during a recorded proceeding of the first and second Superior Court trial)

120.   Attorney Adam Dillard of the Iredell County Sheriff's Office and Captain Tom Souther stated in public records requests that written reports (later discovered)  did not exist.

121.   Plaintiff discovered during the first Superior Court trial that three written reports actually existed- Deputy Ron Hillard, Kathleen Burris, Danny Liles)

122.   On or about Tuesday February 4, 2020 Plaintiff made a second attempt to receive public records for policy and procedures for use on body cam and dash camera. This request was to the Statesville Police Department. To date those records have not been disclosed.

123.   On or about January February 4, 2020, Plaintiff made a public records request to the Sheriff's Office for video, audio and or electronics surveillance which would have depicted Plaintiff.

124.   Attorney Adam Dillard stated that the record sought did not exist. Plaintiff discovered on June 6, 2021 that video footage did in fact exist.

125.   On or about May 27, 2020 Plaintiff filed a subpoena with the Sheriff's Office for video footage of the arrest and the subpoena was denied on the grounds that the "Iredell County Sheriff's office has no record".

126.   Attorney Adam Dillard of the  Iredell County Sheriff's Office sent a copy of the denial for records to the Iredell County District Attorney's office. The DA's office was sent a copy of Dillard's letter.

127.   On June 1, 2021 Plaintiff learned the video footage had been in the possession of Regina Mahoney as early as December 2019.

128.   The video excluded approximately 24 minutes of recorded footage. Knowledge of this excluded footage is supported by a time stamped and dated case summary report produced by the Statesville Police and the time Officer Johnson responded in the video footage.

129.   The video conflicted with the written reports of Deputy Hillard, Kathleen Burris and Danny Liles.

130.   Regina Mahoney, Adam Dillard, Ron Hillard, and other other named defendants were aware that the video excluded evidence needed for the Plaintiff defense.

131.   As a proximate result of Defendants' actions, Plaintiff Federal Civil and Constitutional Rights have been violated. Plaintiff has also incurred expenses and has suffered extreme embarrassment, shame, anxiety and mental distress.

### First Claim
42 U.S.C. § 1983 –Against All Defendants

132.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

133.   Defendants at all times relevant to this action were acting under the color of state law.

134.   Defendants unlawfully deprived Plaintiff of his First Amendment Right to represent himself in rescheduling a traffic citation when he was not allowed to speak with a prosecutor and given a form to recalendar his case for a hearing.

135.   Defendants unlawfully deprived Plaintiff of his property rights without due process of the law in violation of the Fourteenth Amendment to the Constitution of the United States.

136.   At all times relevant hereto, Defendants acted pursuant to a policy or custom of the Iredell County District Attorney's Office of detaining and arresting  Plaintiff without a court order and without providing an opportunity to be heard on a traffic hearing case.

137.   Defendants failed to adopt clear policies and failed to properly train its employees as to the proper role of rescheduling non-attorney's who have missed a court date.

138.   Defendants policy or custom,  and its failure to adopt clear policies and procedures and failure to properly train its employees, were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff.

## Second Claim
42 U.S.C. § 1983  -Unlawful Arrest and False Imprisonment- Against All Defendant

139.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

140.   Defendants at all times relevant to this action were acting under the color of state law.

141.   Defendants unlawful action cause the illegal restraint of Plaintiff and several deputy's and officer Johnson use force to handcuff Plaintiff and the Plaintiff did not consent to the arrest and/or detention by any enforcement official.

142.   Defendants unreasonable and unlawful arrest of Plaintiff is in violation of the Fourth Amendment to the Constitution of the United States as incorporated and applied to the states by way of the Fourteenth Amendment of the Constitution of the United States.

143.   Defendants actions were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff.

144.   As a result of Defendants unlawful action Defendant suffered bruising, bleeding and pain to his body.

## Third Claim
42 U.S.C. § 1983 -Brady Violations- Against All Defendants

145.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

146.   Defendants at all times relevant to this action were acting under the color of state law.

147.   Defendants were aware the video footage excluded at least 24 minutes of time that proved Plaintiff was not trespassing at before or at the time of his arrest by Deputy Hillard and the body camera and dash camera footage would have showed Plaintiff was arrested and detained at a different time that the Defendants claimed Plaintiff had been arrested; all Defendants willfully and/ or inadvertently suppressed the evidence by misleading the Plaintiff that the evidence did not exist at the time of his numerous request and as a result the Plaintiff suffered three separate trial. If the Defendants would not have suppressed the footage and excluded approximately 24 minutes of footage the verdict of the bench trial would have been favorable to Plaintiff and he would not have suffered three trials.

148.`Defendants Brady violation of Plaintiff access to impeachment and exculpatory  evidence deprived Plaintiff of due process of law and is in violation of the  Fourteenth Amendment of the Constitution of the United States.

149.   Defendants actions were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff which caused severe headaches, loss of sleep, and loss of appetite.


### Forth Claim
42 U.S.C. Fourth Amendment Violation Excessive Force for tight Handcuffs-
Against All Involved Law Enforcement Official

150.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

151.   Defendants at all times relevant to this action were acting under the color of state law.

152.   Defendant Hillard intentionally and unlawfully failed to double lock the handcuffs causing the handcuffs to tighten unnecessarily against both of Plaintiff's wrist which eventually drew blood. Unknown named Defendant deputies who responded to the incident failed to loosen and double lock the handcuffs even after Plaintiffs numerous requests for help. Officer Johnson of the Stateville Police Department failed to check if the handcuffs were double locked before Plaintiff was placed in his patrol unit. Officer Johnson knew or should have been aware that policy and procedure of the Statesville Police Department required him to check if the handcuffs were double locked before placing a person in his custody in a patrol unit. Officer Johnson and all Defendant deputy's were aware that sitting on a pair of handcuffs not double locked would cause severe injury. Defendants' acts violated Plaintiff Amendment right not to be subject to excessive force.

153.   Defendant's actions were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff which caused severe headaches, loss of sleep, and loss of appetite, bleeding and bruising on both of his wrist.

### Fifth Claim
Malicious Prosecution- Against All Defendants

154.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

155.   Defendants at all times relevant to this action were acting under the color of state law.

156.   Defendants at all times intentionally and maliciously instituted and pursued a second degree criminal trespass case against Plaintiff without probable cause and the proceeding was terminated in favor of Plaintiff by a jury trial.

157.   Defendants actions were a direct and proximate cause of the multiple prosecution trials suffered by Plaintiff.

### Sixth Claim
Abuse of Process- Against All Defendants

19

158.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

159.   Defendants at all times relevant to this action were acting under the color of state law.

160.   Defendants at all times intentionally abused the legal process of instituting a second degree criminal trespass case against Plaintiff without probable cause and the proceeding was terminated in favor of Plaintiff by a jury trial.

161.   Defendants' abusive actions were a direct and proximate cause of the multiple legal proceedings brought against Plaintiff.

### Seventh Claim
Assault- by Defendant Danny Liles

162.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

163.   Defendants at all times relevant to this action were acting under the color of state law.

164.   Defendant Danny Lilies acted and intended to make contact with the Defendant by grabbing him by his arms and the Plaintiff told the Defendant not to touch him because it was offensive and the touching of Plaintiff was offensive and harmful to him.

165.   Defendant Danny Lilies actions were a direct and proximate cause of the harmful and offensive touching of Plaintiff.

### Eight Claim-
Monell Liability Against Officer Johnson, Statesville Police Department, Deputy Hillard, and Unknown present Deputy's

166.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

167.   Defendants at all times relevant to this action were acting under the color of state law.

168.   Defendant Johnson unlawfully and intentional failed to check and advise on the double locking of Plaintiff's handcuffs prior to Defendant Unknown Deputies placing Plaintiff in his patrol unit. It is the policy or custom  of the Statesville Police Department to double lock handcuffs prior to a person in their custody being placed in a patrol unit.

169.   Defendants actions were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff.

### Ninth Claim
24 U.S.C. 1985 Conspiracy to Interfere with Civil Rights -Against All Defendants

170.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

171.   Defendants at all times relevant to this action were acting under the color of state law.

172.   Each Defendant in this matter made an agreement to act together by altering, detorying and excluding evidence of  written report and video footage and then testifying to the contents of the evidence they tampered with and destroyed with the intention of accomplishing a conviction against the Plaintiff.

173.   Defendants actions were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff.

### Tenth Claim
Fraud- Against All defendants mentioned within

174.   Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

175.   Defendants at all times relevant to this action were acting under the color of state law.

176.   Defendant Adam Dillard, Darren Campbell and the Iredell County Sheriffs office made a misrepresentation on or about May 27, 2020 to the Plaintiff and the Iredell County District Attorney's Office that a subpoena request for video footage was not available to be produced because it did not exist. Adam Dillard knew this misrepresentation was false because the video footage was produced on June 1, 2021 during a Superior Court trial for second degree trespassing against Plaintiff. Aforementioned Defendants were fully aware this concealment of evidence was materially relied upon by the Plaintiff because he did not pursue further proceeding against the Defendants because of the misrepresentation. Plaintiff relied upon the truth of the Defendants statement that the video footage did not exist as a matter of law. As a result Plaintiff suffered through three separate criminal trials as a result of the misrepresentation by the Defendants.

177.   Defendants actions were a direct and proximate cause of the constitutional deprivations suffered by Plaintiff.

## Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

A. On all federal claims, a judgment for compensatory damages in the sum of of an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 U.S.C. § 1988, against all Defendants;

B. An injunction against all Defendants;

C. On his claims against Wilson Security Services, Pasty Allen, Danny Liles, a judgment for compensatory and punitive damages in an amount to be determined at trial;

D. A jury trial on all appropriate issues;

E. An award of cost and expenses against all Defendants;

F. Any and all other relief this Court may deem appropriate.

Respectfully submitted,

Glenn S. Millsaps, Jr.,
Pro Per

Dated July 19, 2022