# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:22-CV-095-KDB-DCK

GLENN S. MILLSAPS, JR.,         )
                                       )
          Plaintiff,          )
                                       )
   v.                        )      **MEMORANDUM AND**
                                       )      **RECOMMENDATION**
IREDELL COUNTY DISTRICT     )
ATTORNEY'S OFFICE; KATHLEEN  )
BURRIS; SARA KIRKLAND; ADAM  )
DILLARD; IREDELL COUNTY CLERK )
OF SUPERIOR OFFICE; JIM NIXON;  )
JOHN/JANE DOES, Unknown Employees )
of the Iredell County Clerk of Superior )
Court; REGINA MAHONEY;       )
JOHN/JANE DOES, Unknown Employees )
of the Iredell County District Attorney's )
Office; WILSON SECURITY SERVICES; )
DANNY LILES; PATSY ALLEN;    )
IREDELL COUNTY; IREDELL     )
COUNTY SHERIFF'S OFFICE; RON  )
HILLARD; DARREN CAMPBELL; CITY )
OF STATESVILLE; STATESVILLE   )
POLICE DEPARTMENT; K. JOHNSON; )
TOM SOUTHER; JOHN/JANE DOES,  )
Unknown Employees of the Statesville  )
Police Department; ERIC GREEN; MATT )
CAMPBELL; GARY MYKINSEN; and  )
JOHN WILLIAMS,          )
                                       )
         Defendants.       )
                                       )

**THIS MATTER IS BEFORE THE COURT** on the "Motion To Dismiss Plaintiff's Amended Complaint On Behalf [Of] Defendants Iredell County District Attorney's Office, Burris, Kirkland, Iredell County Clerk Of Superior Court, Nixon, John/Jane Does Unknown Employees Of Clerk's Office, Mahoney, And John/Jane Does Unknown Employees Of District Attorney's Office" (Document No. 21), "Defendants Adam Dillard, Iredell County, Iredell County Sheriff's

Office, Ron Hillard, Darren Campbell, Eric Green, Matt Campbell, Gary Mykinsen, And John Williams' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6), And Rules 12(b)(1), (2), (4) And (5), And Rules 4(c)(1) And 4(m)" (Document No. 24), the "Motion To Dismiss By Defendants Statesville Police Department, Unknown Employees Of Statesville Police Department, Officer K. Johnson, Captain Tom Souther, And City Of Statesville" (Document No. 27), and the "Motion To Dismiss Plaintiff's Amended Complaint On Behalf Of Defendants Wilson Security Service, Inc., Patsy Allen And Danny Liles" (Document No. 31). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b) and are now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that Document No. 21 be granted, and that the other motions to dismiss be granted in part and denied in part.

## I. BACKGROUND

Plaintiff filed his "Complaint" (Document No. 1) on July 19, 2022 in this Court. Notably, Plaintiff is *pro se*. On October 11, 2022, Plaintiff filed his "1st Amended Complaint" (Document No. 3) ("Amended Complaint") against Defendants Iredell County District Attorney's Office ("DA's Office"), Kathleen Burris ("Burris"), Sara Kirkland ("Kirkland"), Adam Dillard ("Dillard"), the Iredell County Clerk of Superior Office, Jim Nixon ("Nixon"), unknown employees of the Iredell County Clerk of Superior Court, Regina Mahoney ("Mahoney"), unknown employees of the Iredell County District Attorney's Office, Wilson Security Service, Danny Liles ("Liles"), Patsy Allen ("Allen"), Iredell County, the Iredell County Sheriff's Office, Ron Hillard ("Hillard"), Darren Campbell ("Campbell"), the City of Statesville, the Statesville Police Department, K. Johnson ("Johnson"), Tom Souther ("Souther"), unknown employees of the Statesville Police Department, Eric Green ("Green"), Matt Campbell, Gary Mykinsen

("Mykinsen"), and John Williams ("Williams").  Plaintiff's Amended Complaint purports to allege a variety of claims against various defendants – arising out of his arrest for second-degree trespass at the Iredell County District Attorney's Office and the resulting, subsequent criminal trials.  See (Document No. 3).  Ultimately, Plaintiff was found not guilty by a jury of second-degree trespass. Id. at p. 22.

The events giving rise to Plaintiff's lawsuit began in July 2019 when Plaintiff "called the Iredell County Clerk of Superior Court about rescheduling a hearing for a seatbelt ticket," which Plaintiff had missed.  Id. at p. 8.  The court employee "told Plaintiff he could not reschedule the hearing because there was a 24 hour notice to reschedule."  Id.  Instead, Plaintiff was directed to contact the District Attorney's Office "within [] 20 days."  Id.  A few days after calling the courthouse, on July 19, 2019, Plaintiff "went to the District Attorney's Office to reschedule a hearing for the traffic ticket."  Id.  An employee at the DA's Office, Kathleen Burris, "told Plaintiff because he is not an attorney he was required to either pay the fine or hire an attorney."  Id.  Burris eventually told Plaintiff to leave or she would call security.  Id.  Plaintiff ultimately left, returning to the DA's Office five days later on July 24, 2019.  Id.

After again unsuccessfully attempting to reschedule the traffic hearing with Defendant Burris, "Plaintiff left the DA's lobby and went to the Justice Hall annex lobby…and approached [Defendant] Security Guard Danny Liles."  Id. at p. 10.  "After a short discussion with Liles, Plaintiff reentered the DA's lobby[, and] Liles followed Plaintiff and grabbed him by his arm."  Id. Liles told Plaintiff to leave or he would get a sheriff involved.  Id.  "Plaintiff heard Liles tell Patsy Allen to get Deputy Hillard."  Id.  According to Plaintiff's Amended Complaint, Plaintiff "was standing in the doorway which separated the DA's lobby and the Justice hallway of the Annex building" when Deputy Hillard approached Plaintiff.  Id.  Hillard and Plaintiff stepped into the

hallway and had a conversation about what occurred.  Id. at p. 11.  Thereafter, even though "Hillard had not spoken to Kathleen Burris nor had Hillard witnessed why he was placing Plaintiff under arrest," he arrested Plaintiff.  Id. at p. 12.

Hillard apparently did not handcuff Plaintiff correctly, according to Plaintiff, and he repeatedly told Hillard that he was in pain because "the handcuffs were not positioned correctly and were not placed on his wrist properly."  Id.  Plaintiff allegedly told Hillard to "double lock" the handcuffs."  Id.  Other deputies allegedly arrived, to whom Plaintiff directed the same complaint about the handcuffs.  Id. at p. 13.  Plaintiff was put in a patrol car driven by Defendant Johnson, who "did not inspect the handcuffs."  Id. at p. 14.  Plaintiff alleges that he yelled out in pain, and "Officer Johnson loosened the handcuffs."  Id.

Plaintiff was charged with second-degree trespass and found guilty at a bench trial on November 5, 2019.  Id. at p. 16.  After the trial, Plaintiff claims that he "made a public records request to the Sheriff's Office for video, audio and or electronics surveillance which would have depicted Plaintiff."  Id. at p. 18.  He goes on to allege that "Adam Dillard falsely stated in a letter that the recording sought did not exist," and that the Sheriff's Office "has no record."  Id.  Plaintiff claims that "on the day of the second trial, [he] was handed a copy of the July 24, 2019 [video] footage [that he had earlier requested] that allegedly [he had been told] did not exist."  Id. at p. 2.  He claims, though, that the video was missing "24 minutes of footage" but nonetheless "showed that Plaintiff did not have one foot in the DA's doorway at the time Deputy Hillard approached Plaintiff."  Id.  Plaintiff contends that had Defendants not "suppressed the footage…the verdict of the bench trial would have been favorable to Plaintiff and he would not have suffered three trials."  Id. at p. 21.  Ultimately, Plaintiff was found not guilty by a jury of the trespass charge at a third trial.  Id. at p. 1.

4

Plaintiff's Amended Complaint alleges eleven claims against various Defendants:  (1) for a First Amendment violation under 42 U.S.C. § 1983 ("§ 1983") against all Defendants;  (2) for unlawful arrest and false imprisonment against all Defendants;  (3) for <u>Brady</u> violations under § 1983 against all Defendants;  (4) for excessive force in violation of the Fourth Amendment for tight handcuffs under § 1983 against "[a]ll [i]nvolved [l]aw [e]nforcement official[s], and all involved policy makers";  (5) for malicious prosecution against all Defendants;  (6) for abuse of process against all Defendants;  (7) for assault against Defendant Liles;  (8) for a <u>Monell</u> claim against Defendants Johnson, Statesville Police Department, Deputy Hillard, and unknown deputies;  (9) for § 1985 conspiracy to interfere with civil rights against all Defendants;  (10) for fraud against all Defendants;  and (11) for "[n]egligence or in the alternative [n]o dep[rivation] of a liberty interest or privilege but by the law of the land" under the North Carolina Constitution. <u>See</u> (Document No. 3).

The "Motion To Dismiss Plaintiff's Amended Complaint On Behalf [Of] Defendants Iredell County District Attorney's Office, Burris, Kirkland, Iredell County Clerk Of Superior Court, Nixon, John/Jane Does Unknown Employees Of Clerk's Office, Mahoney, And John/Jane Does Unknown Employees Of District Attorney's Office" (Document No. 21) was filed March 3, 2023.  "Defendants Adam Dillard, Iredell County, Iredell County Sheriff's Office, Ron Hillard, Darren Campbell, Eric Green, Matt Campbell, Gary Mykinsen, And John Williams' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6), And Rules 12(b)(1), (2), (4), And (5), And Rules 4(c)(1) And 4(m)" (Document No. 24) was filed March 6, 2023.  The "Motion To Dismiss By Defendants Statesville Police Department, Unknown Employees Of Statesville Police Department, Officer K. Johnson, Captain Tom Souther, And City Of Statesville" (Document No. 27) was filed March 6, 2023.  The "Motion To Dismiss Plaintiff's Amended

Complaint On Behalf Of Defendants Wilson Security Service, Inc., Patsy Allen And Danny Liles" (Document No. 31) was filed March 27, 2023. "Plaintiff's Opposition To Defendants' Motions To Dismiss And Motion For Leave To File Second Amended Complaint" (Document No. 35) was filed April 12, 2023.[1] Defendants Iredell County District Attorney's Office, Burris, Kirkland, Iredell County Clerk of Superior Court, Nixon, John/Jane Does Unknown Employees of Clerk's Office, and John/Jane Does Unknown Employees of the Iredell County District Attorney's Office filed a "Notice Of Non-Reply To Plaintiff's Response To Defendant's Motion To Dismiss" (Document No. 40) on April 19, 2023. "Defendant Statesville Police Department, Unknown Employees Of Statesville Police Department, Officer K. Johnson, Captain Tom Souther, And[] City Of Statesville's Notice Of No Reply To Plaintiff's Response In Opposition To Defendants' Motion To Dismiss" (Document No. 44) was filed April 28, 2023. Defendants Wilson Security Services, Inc., Patsy Allen, and Danny Liles filed their "Notice Of Non-Reply To Plaintiff's Response To Defendants' Motion To Dismiss" (Document No. 45) on April 28, 2023. The "Reply Brief In Support Of Defendants Adam Dillard, Iredell County, Iredell County Sheriff's Office, Ron Hillard, Darren Campbell, Eric Green, Matt Campbell, Gary Mykinsen, And John Williams' Motion To Dismiss Plaintiff's Amended Complaint" (Document No. 46) was filed May 18, 2023.

The pending motions have been fully briefed and are ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

**Motion To Dismiss Under Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject-matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The plaintiff has the burden of proving that subject-

---

[1] The undersigned denied the portion of Plaintiff's response brief that sought leave to file a second amended complaint. See (Document No. 43).

6

Case 5:22-cv-00095-KDB-DCK    Document 70    Filed 01/09/24    Page 6 of 32

matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject-matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.; see also Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

**Motion To Dismiss Under Rule 12(b)(2)**

A motion to dismiss under Rule 12(b)(2) seeks to dismiss a complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence…[W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional

7

> basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676 (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. Nat'l Bus. Sys., Inc., 750 F. Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Indus., Inc. v. SEIM S.R.L., 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant...factual conflicts must be resolved in favor of the party asserting jurisdiction..." Id. (internal citations omitted).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 119 (2014). Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

**Motion To Dismiss Under Rule 12(b)(6)**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts

to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

The undersigned begins the analysis by highlighting the standard of review applicable to *pro se* complaints. Courts are to "liberally construe[]" *pro se* complaints, "however inartfully pleaded," and look upon such documents with "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotations and citations

9

omitted). However, while courts look upon *pro se* complaints with "special judicial solitude," the liberal perspective that a court must adopt in these cases "does not transform the court into an advocate…[o]nly those questions which are squarely presented to a court may be properly addressed." Weller v. Dep't of Soc. Servs. for City of Baltimore, 901 F.2d 387, 391 (4th Cir. 1990). Keeping those principles in mind, it is important to note at the outset the extraordinary breadth of Plaintiff's Amended Complaint, which appears to take a kitchen-sink approach to the events alleged. Plaintiff states eleven claims, seven of which are alleged against all twenty-five Defendants. The undersigned will examine the eleven claims in turn below.[2] First, though, it is necessary to discuss whether some of the twenty-five named Defendants are properly sued, at all.[3]

**Parties Who Cannot Be Sued**

### a. Defendants Matt Campbell, Darren Campbell, Green, Mykinsen, and Williams

---

[2] The undersigned recognizes that some of the motions to dismiss discuss timeliness and other issues with Plaintiff's attempt at service of process. See (Document Nos. 25, 28, 32). While the undersigned acknowledges such concerns, in light of Plaintiff's *pro se* status and the relevant standard, the undersigned will analyze the motions to dismiss pursuant to Rule 12(b)(6). Pursuant to the relevant standard, courts are not required to dismiss a complaint if service is untimely – dismissal is but one of two options. Fed.R.Civ.P. 4(m). Under Federal Rule of Civil Procedure 4, the court can "order that service be made within a specified time," even if "a defendant is not served within 90 days after the complaint is filed." Id. Therefore, the undersigned will not recommend dismissal of this action on the basis of untimely or improper service. Clearly, all of the parties were on notice of the lawsuit given their respective motions, and "while a litigant's pro se status cannot be the sole factor in assessing whether good cause exists for non-compliance with Rule 4(m), it is a relevant consideration." Lane v. Lucent Techs., Inc., 388 F. Supp. 2d 590, 597 (M.D.N.C. 2005) (internal citations and quotations omitted). Similarly, the only Defendants for whom *improper* service of process was argued include Defendants Liles, Allen, Souther, and Johnson. See (Document No. 28, p. 5); (Document No. 32, p. 5). Still, it is clear these Defendants had actual notice. See Ancient Sun Nutrition, Inc. v. Lawlor, 2008 WL 1944235, at *2 (W.D.N.C. May 1, 2008) ("[g]enerally, 'where actual notice of the commencement of the action and the duty to defend has been received by the one served,' Rule 4(e)(2) is liberally construed to effectuate service" (quoting Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 1963)). Thus, issues with service of process will not serve as the basis for any recommended dismissal of Plaintiff's Amended Complaint.

[3] It appears that Plaintiff is attempting to sue each individual Defendant who is employed by a governmental body in both their individual and official capacities. Importantly, the undersigned notes that "[o]fficial capacity suits…'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (internal citations omitted). So long as "the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity…[i]t is *not* a suit against the official personally, for the real party in interest is the entity." Id. at 166.

Plaintiff names as Defendants certain individuals for whom he does not outline any specific factual allegations.  For this reason, any claims purportedly alleged against Defendants Matt Campbell, Darren Campbell, Green, Mykinsen, and Williams should be dismissed.  There are no specific factual allegations whatsoever against these Defendants, and thus, it is not at all clear how they were involved.  "Since Plaintiff has not pled facts showing wrongful or illegal acts by [] these six defendants, these defendants have neither 'fair notice' of any claim against them nor notice of the 'grounds upon which [any] claim against [them] rests.'"  (Document No. 25, p. 8) (citing Twombly, 550 U.S. at 555).  The undersigned thus respectfully recommends dismissal of all purported claims alleged against these five Defendants.

**b.  Defendants Nixon, Kirkland, and Iredell County Clerk of Superior Office**

The undersigned respectfully recommends that the claims against Defendants Nixon, Kirkland, and the "Iredell County Clerk of Superior Office" suffer a similar fate – there simply are insufficient or no factual allegations leveled specifically against these Defendants.  See (Document No. 3).  Based on the same reasoning above, the undersigned respectfully recommends that all claims purportedly alleged against these three Defendants be dismissed for failure to state a claim – no factual basis has been provided that could plausibly support a claim to survive dismissal under Rule 12(b)(6).

**c.  Defendants Burris and Mahoney**

Regarding the claims against Defendants Burris and Mahoney, the undersigned respectfully recommends that any purportedly alleged claims against these two Defendants be dismissed.  First, there is simply insufficient factual content that links these two Defendants to the alleged claims.  With respect to Defendant Burris, Plaintiff discusses both (1) testimony that Defendant Burris gave at trial about his having "one foot in the doorway of the DA's lobby and

11

another foot in the hallway of the annex building when Hillard exited the courtroom," and (2) her role in telling Plaintiff that if he did not leave the DA's Office "she would call security." Id. at pp. 8, 16. Defendant Burris "is an employee of the District Attorney's Office" in Iredell County. (Document No. 22, p. 11). First, the allegation that Burris told Plaintiff to leave is insufficient to state a claim against Burris – what is the alleged wrong, and to which claim does this fact relate? Second, even if Plaintiff were attempting to allege a claim against Burris for allegedly incorrect statements made as a witness at trial, Burris would be entitled to immunity on such claims. See Rehberg v. Paulk, 566 U.S. 356, 367 (2012) ("the immunity of a trial witness sued under § 1983…[is] absolute…with respect to *any* claim based on the witness' testimony").

With respect to Defendant Mahoney, the problem is similarly twofold. First, there are simply not enough factual allegations that tie Mahoney to the events at issue to state a plausible claim against her. Second, any alleged argument that Mahoney's conduct in allegedly intentionally suppressing video evidence also fails. See (Document No. 3, p. 19). Defendant Mahoney is a prosecutor with the Iredell County District Attorney's Office. See (Document No. 22, p. 10). Prosecutorial immunity bars suit against defendant prosecutors sued for activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). And, the Fourth Circuit has held that prosecutorial immunity covers allegations of withholding of material, exculpatory evidence. See Carter v. Burch, 34 F.3d 257, 263 (4th Cir. 1994). Thus, any alleged claims against Defendants Burris and Mahoney are respectfully recommended to be dismissed.

### d. Defendants the DA's Office, City of Statesville, the Statesville Police Department, Iredell County, and the Iredell County Sheriff's Office

Plaintiff does not specifically allege facts regarding the DA's Office and its liability apart from the alleged failure "to properly train its employees as to the proper role of rescheduling non-attorney's who have missed a court date." (Document No. 3, p. 19). Those allegations will be discussed below in the section regarding Plaintiff's first claim. Apart from that claim, however, any other attempt to hold the DA's Office liable under § 1983 would fail. The crux of Plaintiff's allegations seems to be, without more, that the DA's Office should be held liable because it employed individuals who allegedly violated Plaintiff's constitutional rights. The other governmental entities named as Defendants in this lawsuit – the City of Statesville, the Statesville Police Department, Iredell County, and the Iredell County Sheriff's Office – are seemingly sued under a similar theory. The Supreme Court has squarely rejected this kind of vicarious liability legal theory. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").

Furthermore, with respect to the state law claims purportedly alleged against these governmental entities, the DA's Office and all other governmental entities sued here are also immune. "Under North Carolina law, the doctrine of sovereign or governmental immunity bars actions against municipalities and public officials sued in their official capacity." Hogan v. Cherokee Cty., 1:18-CV-096-MR-WCM, 519 F. Supp. 3d 263, 286 (W.D.N.C. 2021). While immunity can be waived through the purchase of liability insurance covering a certain risk, the presumption "is that immunity applies, absent some allegation about the purchase of liability insurance." Dean v. Campbell, 5:22-CV-167-KDB-DCK, 2023 WL 5281945, at *9 (W.D.N.C. July 14, 2023), *memorandum and recommendation adopted*, 2023 WL 5281514. Here, Plaintiff does not make any allegation about a waiver of governmental immunity, including any reference to the purchase of liability insurance by any of the governmental entities named as Defendants.

13

Thus, all claims against the DA's Office,[4] the City of Statesville, the Statesville Police Department,[5] Iredell County, and the Iredell County Sheriff's Office are respectfully recommended to be dismissed.

### e. Defendants Wilson Security Services, Inc., Allen, and Liles

Furthermore, the claims purportedly alleged against Wilson Security Services, Inc. should be dismissed. It seems that Plaintiff named the company as a Defendant solely on account of its status as employer of Allen and Liles. "As a general rule, a principal will be liable for its agent's wrongful acts under the doctrine of *respondeat superior* when the agent's act (1) is expressly authorized by the principal; (2) is committed within the scope of the agent's employment and in furtherance of the principal's business; or (3) is ratified by the principal. White v. Consolidated Planning, Inc., 603 S.E.2d 147, 157 (N.C. Ct. App. 2004). As Defendant Wilson Security Services, Inc. states in its motion to dismiss, "Plaintiff has failed to adequately plead that Defendants Liles and Allen were acting within the scope of their employment during the alleged events…[and has failed] to allege any facts demonstrating that Wilson Security authorized [their employees] to perform the wrongful actions alleged." (Document No. 32, p. 11).

With respect to Defendant Allen, there are simply insufficient factual allegations to state a plausible claim against her. The only real factual allegations involving Allen are that she went "to get Deputy Hillard," who subsequently arrested Plaintiff. (Document No. 3, p. 10). Thus, the only claim for which there is a possible link with Allen is the unlawful arrest claim. Still, as the arresting officer was Deputy Hillard, and there is no real allegation of wrongdoing on Allen's part, it is

---

[4] Again, the first claim for a First Amendment violation pursuant to § 1983 will be specifically discussed below with respect to the DA's Office.

[5] The undersigned will also discuss the Monell claim alleged against the Statesville Police Department in the relevant section for that claim.

unclear how Defendant Allen could possibly be held liable under any claim. Even if there was some actual wrongdoing on Allen's part, though, as a private party, she cannot be held liable under § 1983. "To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a 'person' acting under color of state law." Elmore v. Mecklenburg Cty. Courthouse, 3:23-CV-036-MR, 2023 WL 5539023, at *2 (W.D.N.C. Aug. 28, 2023). And, private parties are considered to be engaging in state action "only if the conduct at issue is 'fairly attributable to the State.'" Id. at *3 (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)). Here, there is no plausible allegation that Allen was acting as an arm of the state. Plaintiff conclusorily states that Allen and Liles were acting "under the color of state law," without more. (Document No. 3, p. 6). Such conclusory allegations are insufficient to withstand dismissal under Rule 12(b)(6), and therefore all claims purportedly alleged against Defendant Allen are respectfully recommended to be dismissed.

The analysis on the § 1983 claims purportedly alleged against Defendant Liles is the same. Conclusory allegations about Liles acting "under the color of state law" without more do not establish the requisite connection to state action that is required to state a plausible § 1983 claim against Liles as a state actor. Elmore, 2023 WL 5539023, at *3; see (Document No. 3, p. 6). The allegations related to the assault claim against Defendant Liles will be discussed in the section addressing that claim in the section that follows. The only other factual allegations regarding Liles are that he allegedly falsely testified "that Plaintiff had one foot in the doorway of the DA's lobby and another foot in the hallway of the annex building when Hillard exited" the courtroom and that he told Patsy Allen to get the sheriff. (Document No. 3, pp. 10, 16). As already discussed, witnesses are immune from claims under § 1983 seeking to hold them liable for testimony given

in a former trial. <u>Rehberg</u>, 566 U.S. at 367. And, Plaintiff's allegation about Liles asking Allen to get a sheriff does not involve any wrongdoing, and therefore, any purportedly alleged claim arising from this fact should fail. Thus, apart from the assault claim discussed in the next section, all other claims purportedly alleged against Defendant Liles are also respectfully recommended to be dismissed.

### f. Defendants Souther and Dillard

Defendant Dillard is "an attorney employed by the [Iredell County] Sheriff's Office." (Document No. 25, p. 5). The primary allegation in the Amended Complaint related to Dillard is that he "falsely stated in a letter that [the video footage depicting the incident] did not exist" in response to Plaintiff's public records request to the Iredell County Sheriff's Office. (Document No. 3, p. 18). And, the Amended Complaint contains only one mention of Defendant Souther specifically: that, in response to Plaintiff's public records request for body and dash camera footage to the Statesville Police Department, Souther responded that the footage did not exist. (Document No. 3, p. 15). The only federal claim that these factual allegations possibly support is the alleged <u>Brady</u> violation under § 1983, and thus, the allegations against Defendants Souther and Dillard with respect to that claim will be discussed in that section.

With respect to any state law claims possibly alleged against Defendants Souther and Dillard, they are entitled to public official immunity on such claims. In North Carolina, "[t]he public immunity doctrine protects public officials from individual liability for negligence in the performance of their governmental or discretionary duties." <u>Hogan</u>, 519 F. Supp. 3d at 288 (internal quotations and citations omitted). Liability extends only to those state law claims for which there is an allegation that the individual government official acted with "malice" or with the state of mind with which "a man of reasonable intelligence would know to be contrary to his duty."

Id. (internal quotations and citations omitted).  Here, there is no allegation that Defendants Souther or Dillard maliciously withheld the body or dash camera footage or the video footage of the arrest itself or that they knew that doing so would be contrary to their respective duties.  In fact, with respect to Defendant Dillard, Plaintiff suggests that the video may have been "inadvertently suppressed."  (Document No. 3, p. 21).[6]  This allegation removes the element of malice that is required to be stated with plausibility for immunity not to apply.  Thus, all claims against Defendants Souther and Dillard[7] are respectfully recommended to be dismissed.

### g. Unknown Employees of the Iredell County Clerk of Superior Court, the DA's Office, and the Statesville Police Department

Plaintiff also attempts to sue three sets of "unknown" employees of the Iredell County Clerk of Superior Court, the DA's Office, and the Statesville Police Department.  There are no allegations that are specific enough to warrant survival of any alleged claims against these employees.  It is not acceptable "to make scattergun claims against [unknown defendants] on a mere possibility that they could have been involved in the alleged wrongful conduct."  Bailey v. Polk Cty., N.C., 2011 WL 4565469, at *8 (W.D.N.C. Mar. 7, 2011).  Thus, all claims against these unknown Defendants are respectfully recommended to be dismissed.

**Claim One: § 1983 Claim for First Amendment Violation**

Plaintiff alleges in his first claim that "Defendants unlawfully deprived Plaintiff of his First Amendment Right to represent himself in rescheduling a traffic citation when he was not allowed to speak with a prosecutor and given a form to recalendar his case for a hearing."  (Document No.

---

[6] Notably, this allegation that the evidence could have been "inadvertently suppressed" conflicts with other allegations elsewhere in the Amended Complaint, which seem to describe the suppression as intentional.  See (Document No. 3, p. 19) ("Regina Mahoney, Adam Dillard, Ron Hillard, and other [] named defendants were aware that the video excluded evidence needed for the Plaintiff['s] defense").

[7] The Brady claim against both Defendants Souther and Dillard under § 1983 will be discussed in the following section.

3, p. 19). Plaintiff goes on to allege that "Defendants acted pursuant to a policy or custom of the Iredell County District Attorney's Office of detaining and arresting Plaintiff without a court order and without providing an opportunity to be heard on a traffic citation case." Id. The undersigned concludes that Plaintiff's first claim is simply devoid of sufficient facts to state a plausible claim. There are significant holes in factual detail – although Plaintiff purports to bring this claim against all Defendants, no specific Defendant apart from the Iredell County District Attorney's Office is named in this section. Furthermore, if Plaintiff is attempting to state a claim for retaliatory arrest for protected First Amendment activity, it is not clear what First Amendment right Plaintiff is claiming he was exercising. There are no further details about the alleged "custom" or "policy" of the DA's Office, nor any attempt to allege how the twenty-five named Defendants were factually involved in the events giving rise to this specific claim.

Therefore, the undersigned will respectfully recommend that Plaintiff's first claim pursuant to § 1983 for a First Amendment violation be dismissed. There simply is not sufficient factual detail alleged to make out a plausible claim under 12(b)(6), nor is it clear exactly what Plaintiff is claiming. The Court cannot play the role of attorney and attempt to define Plaintiff's claim against all twenty-five Defendants for him.

**Claim Two: Unlawful Arrest and False Imprisonment**

Plaintiff's second claim is alleged against all Defendants for "unlawful arrest of Plaintiff." (Document No. 3, p. 20). Although Plaintiff does not state in the claim's heading (as he seems to have done for other alleged claims pursuant to § 1983) that it is brought under § 1983, in the description of the claim, he states that his arrest was "in violation of the Fourth Amendment to the Constitution…[and] the Fourteenth Amendment." Id. Thus, it is not clear whether Plaintiff is bringing a state law unlawful arrest claim or a claim pursuant to § 1983 for arrest in violation of

18

his federal constitutional rights. The undersigned will not guess as to what claim Plaintiff was attempting to bring given the lack of clarity. Under either standard, though – the federal or state law claim for unlawful arrest – a plaintiff must plausibly allege that his arrest was made without probable cause in order to state a valid claim. See Miller v. Prince George's Cty., MD, 475 F.3d 621, 627 (4th Cir. 2007); Myrick v. Cooley, 371 S.E.2d 492, 495 (N.C. Ct. App. 1988). The only Defendants for whom this claim makes any sense based on the factual allegations are Defendants Johnson and Hillard, in their individual capacities.

Based on the allegations in Plaintiff's Amended Complaint and the arguments in Defendants' briefing on the motions to dismiss, there appears to be a factual dispute even about (1) what Defendant Hillard observed – that is, whether he observed Plaintiff standing in the DA's Office or only in the hallway; and (2) what Defendant Hillard knew prior in time to effectuating Plaintiff's arrest – i.e., to whom he had spoken and what information he had gathered from such conversations. See (Document No. 25, pp. 11-12) (Defendant Hillard argues that "probable cause existed to arrest Plaintiff for second degree trespassing"); (Document No. 3, p. 2) (Plaintiff alleges that he was not standing in the DA's Office but rather in the hallway and Defendant Hillard did not speak to the DA's Office employee – Burris – who had told him to leave prior to arresting him). These facts are essential to determination of whether probable cause existed for Plaintiff's arrest. And, although Johnson was not the initial arresting officer, Plaintiff suggests that there was some doubt in Johnson's mind about the trespass charge, and yet he continued to effectuate the arrest by transporting Plaintiff in his patrol car anyway. See (Document No. 3, p. 14) ("Plaintiff noticed Officer Johnson was confused about the charge of trespassing").

"Probable cause is determined from the totality of the circumstances known to the officer at the time of the arrest." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002). "Second-degree

trespass occurs when a person 'enters or remains on premises of another' without authorization" when one of two conditions are met:  "(1) [a]fter he has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person;"  or "(2) [t]hat are posted, in a manner reasonably likely to come to the attention of intruders, with notice not to enter the premises." State v. Burwell, 808 S.E.2d 583, 593 (N.C. Ct. App. 2017) (citing N.C. Gen. Stat. § 14-159.13)).  Given that courts are not to "resolve contests surrounding the facts" at the motion to dismiss stage, the undersigned will respectfully recommend that Plaintiff's unlawful arrest claim (the state law and the federal variety—whichever is intended to be alleged) survive dismissal against Defendants Hillard and Johnson only.[8] Martin, 980 F.2d at 952.

**Claim Three: § 1983 Claim for <u>Brady</u> Violation**

Prosecutors who suppress material exculpatory evidence violate the Due Process clause. Brady v. Maryland, 373 U.S. 83, 87 (1963).  Here, however, the only defendants for which this claim requires analysis are not prosecutors – they include Dillard, who worked for the Iredell County Sheriff's Office, and Souther, who worked for the Statesville Police Department.  All attorney Defendants associated with the Iredell County District Attorney's Office are absolutely

---

[8] The undersigned will not address qualified immunity at the motion to dismiss stage.  "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Given that it is not clear whether or not a constitutional violation occurred, the undersigned cannot determine at this early stage whether the officers are immune because the threshold inquiry – whether a constitutional right has been violated – requires fact-specific inquiries inappropriate at this stage of the litigation.  See Laschober v. Ammons, 1:21-CV-107-MR-WCM, 2021 WL 8054170, at *7 (W.D.N.C. Oct. 29, 2021) ("[w]hile the issue of qualified immunity should be addressed at the earliest stage possible, it can be difficult to determine a defendant's entitlement to qualified immunity at the pleading stage").

immune from this claim on account of prosecutorial immunity for alleged <u>Brady</u> violations under § 1983. <u>See</u> <u>supra</u> p. 12; and <u>Carter</u>, 34 F.3d at 263.[9]

The only individual Defendants for whom a <u>Brady</u> claim makes sense based on Plaintiff's alleged facts are Dillard and Souther in their individual capacities. All other Defendants are either not liable for the reasons discussed above or there is insufficient factual content linking them to this claim. With respect to Dillard, Plaintiff contends that "Adam Dillard, an attorney for the Iredell County Sheriff's Office, falsely denied a public record request and an answer to a subpoena that a [video of the incident leading to the trespassing charge] did not exist." (Document No. 3, p. 1). Plaintiff goes on to allege that Dillard "sent a courtesy copy of the denial letter to the Iredell County District Attorney's Office, knowing the footage existed and their office gave it to the DA's office at least five months prior." <u>Id.</u>

"While the Fourth Circuit has not laid out the specific parameters of an officer's duty to disclose evidence, a plaintiff bringing a Section 1983 claim against an officer must, at a minim[um], allege that the officer" did three things. <u>Chapman v. Rhoney</u>, 2011 WL 7971750, at *8 (W.D.N.C. Aug. 3, 2011). One, a plaintiff must allege that the officer "intentionally withheld exculpatory evidence from the prosecution." <u>Id.</u> Two and three, a plaintiff must allege that this "resulted in a wrongful criminal conviction" that was "subsequently overturned pursuant to a *Brady* violation." <u>Id.</u> And four, a plaintiff must allege that "the officers acted in bad faith." <u>Id.</u> Plaintiff fails on the first element. He cannot show that Dillard withheld evidence from the prosecution, for in fact, he alleges that he "gave it to the DA's office." (Document No. 3, p. 1).

---

[9] Plaintiff contends that 24 minutes of the relevant video were not played at his trial that would have "proved Plaintiff was not trespassing before or at the time of his arrest." (Document No. 3, p. 21). Since the prosecution played this video at Plaintiff's trial, and the prosecutors are absolutely immune from <u>Brady</u> claims under § 1983, any claim arising out of this fact must fail.

For this reason, the undersigned respectfully recommends that Plaintiff's <u>Brady</u> claim under §
1983 against Dillard be dismissed.

The allegations against Defendant Souther are different in kind. Plaintiff alleges that
Souther stated in response to Plaintiff's request for body camera or dash camera footage from
Officer Johnson that such footage did not exist. <u>Id.</u> at p. 16. Nowhere, though, does he allege that
Defendant Souther was lying or falsely representing that the evidence did not exist. Clearly, "there
can be no suppression of evidence that does not exist at the time of trial or sentencing." <u>Burgess
v. Terry</u>, 478 F. App'x 597, 600 (11th Cir. 2012); <u>see also</u> <u>Arizona v. Youngblood</u>, 488 U.S. 51,
58 (1988) ("unless a criminal defendant can show bad faith on the part of the police, failure to
preserve potentially useful evidence does not constitute a denial of due process of law"). The
undersigned thus respectfully recommends that the <u>Brady</u> claim under § 1983 purportedly asserted
against Defendant Souther be dismissed.

**Claim Four: § 1983 Claim for Excessive Force in Violation of the Fourth Amendment**

Plaintiff's fourth claim is alleged against "[a]ll [i]nvolved [l]aw [e]nforcement official[s],
and all involved policymakers" for a Fourth Amendment violation of Plaintiff's alleged right to be
free from excessive force for "tight handcuffs." (Document No. 3, p. 21). In reality, though, the
only Defendants who are potentially liable on this claim – both because they are the only logical
Defendants based on the factual allegations and because others are immune from suit for the
reasons described in the preceding sections – include Defendants Johnson and Hillard in their
individual capacities. Plaintiff alleges that "Defendant Hillard intentionally and unlawfully failed
to double lock the handcuffs to punish Plaintiff…which caused the handcuffs to tighten
unnecessarily against both of Plaintiff's wrist[s] which eventually drew blood." <u>Id.</u> at pp. 21-22.
With respect to Defendant Johnson, Plaintiff alleges that Johnson "failed to check if the handcuffs

were double locked before Plaintiff was placed into the back seat of his patrol unit." (Document No. 3, p. 22). Nonetheless, Plaintiff also states that when he "yelled loudly in extreme pain," "Officer Johnson loosened the handcuffs." Id. at p. 14.

"Excessive force claims in the context of an arrest are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Kitchen v. Miller, 1:14-CV-122-MR-DLH, 2016 WL 7478982, at *7 (W.D.N.C. Dec. 29, 2016) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)). "Reasonableness must be evaluated 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Kitchen, 2016 WL 7478982, at *7 (citing Graham, 490 U.S. at 396).

Considering Plaintiff's factual allegations here, the undersigned will recommend "that Plaintiff's § 1983 claim based on excessive force be allowed to proceed to allow for further development of the factual record." Laschober v. Ammons, 1:21-CV-107-MR-WCM, 2021 WL 8054170, at *7 (W.D.N.C. Oct. 29, 2021). Indeed, the Eighth Circuit affirmed the denial of summary judgment to defendants where the allegation supporting an excessive force claim was that the handcuffs were too tight. See Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002); see also Sharnick v. D'Archangelo, 935 F. Supp. 2d 436, 448 (D. Conn. 2013) (denying summary judgment on excessive force claim where officer failed to double lock handcuffs and ignored arrestee's complaints of pain and "pleas to loosen the handcuffs"). Therefore, the undersigned will respectfully recommend that the motion to dismiss Plaintiff's fourth claim for excessive force pursuant to § 1983 be denied with respect to Defendants Johnson and Hillard only.[10]

**Claim Five: State Law Claim for Malicious Prosecution**

---

[10] Again, for the reasons discussed in an earlier section, whether qualified immunity applies is not appropriate to determine at this stage of the litigation. See supra p. 20, n.8.

Plaintiff's fifth claim is alleged against all Defendants for malicious prosecution. (Document No. 3, p. 22). However, on account of either inability to be sued due to immunity or lacking relevant factual detail (all described in the party-specific sections above), most of the named Defendants cannot be sued for this claim. Nonetheless, Defendants Johnson and Hillard – both law enforcement officers who participated in Plaintiff's arrest – are proper Defendants for this claim, which will be analyzed below.

The elements of malicious prosecution include: "(1) the initiation or maintenance of a proceeding against the plaintiff by the defendant;" "(2) termination of that proceeding favorable to the plaintiff;" "(3) lack of probable cause to support that proceeding;" "and (4) the defendant's malice." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000); see also Best v. Duke Univ., 448 S.E.2d 506, 510 (N.C. 1994). Here, it seems evident that at least with respect to Defendants Johnson (employed by the Statesville Police Department) and Hillard (employed by the Iredell County Sheriff's Office), this claim should proceed. Although it is a state law claim, given that malice is an essential element, public official immunity does not apply. Hogan, 519 F. Supp. 3d at 288.

The first element of a malicious prosecution claim is satisfied "[w]here it is unlikely there would have been a criminal prosecution…except for the efforts of a defendant." Lopp v. Anderson, 795 S.E.2d 770, 780 (N.C. Ct. App. 2016) (citing Becker v. Pierce, 608 S.E.2d 825, 829 (N.C. Ct. App. 2005)) (internal quotations and citations omitted). As the officers effectuating the arrest of Plaintiff Millsaps, their role was essential in initiating the criminal prosecution for the second-degree trespass charge. Second, as Plaintiff states in his Amended Complaint, the second element is satisfied because at the third trial, he was found not guilty by a jury. See (Document No. 3, p. 1). With respect to the third element, the undersigned has already discussed probable

24

cause in an earlier section of this document. See supra pp. 19-20. Whether probable cause existed for Plaintiff's arrest is contested at this point, and thus, Plaintiff has plausibly alleged the existence of this element at this stage of the proceedings. And, finally, Plaintiff plausibly alleged the existence of malice – the fourth element. Thus, the undersigned respectfully recommends that this claim survive as to Defendants Johnson and Hillard only in their individual capacities.

**Claim Six: State Law Claim for Abuse of Process**

Plaintiff's sixth claim is again alleged against all Defendants for the state law tort of abuse of process. (Document No. 3, pp. 23-24). With respect to the tort of abuse of process under North Carolina law, a Plaintiff must allege both (1) "the existence of an ulterior purpose"; and (2) "an act in the use of the process not proper in the regular prosecution of the proceeding." Shipp v. Goldade, 5:19-CV-085-KDB-DCK, 2020 WL 1429248, at *6 (W.D.N.C. Mar. 19, 2020) (citing Barnette v. Woody, 88 S.E.2d 223, 227-28 (N.C. 1955)). Here, Plaintiff does not allege that any Defendant had an ulterior purpose. For this reason, Plaintiff's abuse of process claim should fail – the undersigned respectfully recommends that Defendants' motion to dismiss Plaintiff's abuse of process claim be granted.

**Claim Seven: State Law Claim for Assault**

Plaintiff's seventh claim is alleged only against Defendant Liles for state law assault. The only description in Plaintiff's Amended Complaint specific to this claim is that Liles "acted and intended to make contact with the Defendant by grabbing him by his left arm," after which "Plaintiff told the Defendant not to touch him." (Document No. 3, p. 25).

Importantly, "[a]n assault is an offer to show violence to another without striking him." Mazzariello v. Atlantic Coast Waterproofing, 3:16-CV-835-RJC-DCK, 2017 WL 9516604, at *7 (W.D.N.C. May 19, 2017) (internal quotations and citations omitted). Id. Thus, "the interest

25

protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person." Id. Here, Plaintiff alleges that Defendant Liles actually made contact with Plaintiff's arm.

The undersigned finds that this is a close call. While Defendant Liles argues that there was no apprehension of harmful or offensive contact because "Defendant Liles allegedly approached Plaintiff from *behind*' and "Plaintiff has not alleged that he was…even aware of the possibility of [] contact," the undersigned finds that further development of the record is necessary to elucidate whether Plaintiff was aware of Liles' presence. (Document No. 32, p. 7). Plaintiff states in his response that he told Liles not to touch him "believing that Liles would touch him again after Liles had already grabbed Plaintiff." (Document No. 35, p. 10). In this respect, the undersigned could understand how the act of grabbing Plaintiff's arm was the apprehension of further harmful or offensive contact. Respectfully, it is recommended that this claim survive Defendant Liles' motion to dismiss to allow for further discovery.

**Claim Eight: <u>Monell</u>**

Plaintiff's eighth claim is a <u>Monell</u> claim alleged against Defendants Johnson, Hillard, and the Statesville Police Department. Plaintiff's allegations are that "[i]t is the policy or custom of the Statesville Police Department and the Iredell County Sheriff's Office to double lock handcuffs prior to a person in their custody being placed in a patrol unit." (Document No. 3, p. 25). He alleges that Hillard incorrectly "positioned" the handcuffs, and Officer Johnson failed to "inspect the handcuffs prior to Plaintiff being put in the patrol unit" despite policies that required double-locking of handcuffs. <u>Id.</u> at pp. 13-14.

It is important to establish at the outset that Defendants Hillard and Johnson cannot be sued in their individual capacities pursuant to a <u>Monell</u> theory of liability, which applies only to

governmental entities.  King v. Blackwood, 2023 WL 4163141, at *11 (M.D.N.C. June 23, 2023) ("municipal liability [pursuant to Monell] applies only to local government entities, including local governmental officials sued in their official capacity");  see also Gatchel v. Henry Cty., Georgia, 2023 WL 6216529, at *4 (N.D. Ga. June 20, 2023) (granting motion to dismiss where defendants sued in individual capacity were sued pursuant to Monell).  For this reason, the undersigned respectfully recommends that any purportedly alleged Monell claim against Defendants Johnson and Hillard in their individual capacities be dismissed.[11]

Given that the undersigned must treat any purportedly alleged official capacity claims against both Defendants Johnson and Hillard as against the entities of which they are employed – the Statesville Police Department and the Iredell County Sheriff's Office, respectfully – an analysis of whether a Monell claim is plausibly alleged is necessary.  Monell liability applies when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  Pursuant to Monell, there are four theories that support liability pursuant to this claim:

> (1) through an express policy, such as a written ordinance or regulation;  (2) through the decisions of a person with final policymaking authority;  (3) through an omission, such as a failure to properly train [employees], that 'manifest[s] deliberate indifference to the rights of citizens;  or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Dean, 2023 WL 5281945, at *5 (quoting Bailey v. Campbell, 5:22-CV-052-KDB-DSC, 2022 WL 16849126, at *2 (W.D.N.C. Nov. 10, 2022) (internal citations omitted)).

---

[11] As stated previously, claims against governmental officials in their official capacity are duplicative of claims brought against the governmental entity by which they are employed.  See Dean, 2023 WL 5281945, at *3 ("when a lawsuit is brought against an individual in his or her official capacity, courts will treat the claim as effectively against the entity to which that official belongs").

It is not clear what theory of <u>Monell</u> liability Plaintiff is alleging.  Nonetheless, what is evident is that he clearly states that both the Iredell County Sheriff's Office and the Statesville Police Department had policies or customs requiring "double lock[ing] of handcuffs prior to a person in their custody being placed in a patrol unit." (Document No. 3, p. 25).  In this respect, Plaintiff's argument seems to be that the individual officers did not follow their employer's policies.  This kind of argument amounts to a *respondeat superior* theory – one which is not tenable under <u>Monell</u>.  Individual officers' alleged failure to double lock handcuffs was "not caused by a policy of any governmental entity;" in fact, Plaintiff alleges the opposite – that the governmental entities had a policy. (Document No. 25, p. 19);  <u>see also</u> <u>Estate of Jones v. City of Martinsburg, West Virginia</u>, 961 F.3d 661, 672 (4th Cir. 2020) ("*Monell* liability cannot be predicated on a theory of *respondeat superior*").  Thus, the undersigned respectfully recommends that this claim be dismissed.

**Claim Nine: § 1985 Claim for Conspiracy to Interfere with Civil Rights**

Plaintiff's ninth claim is for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985 against all Defendants.  In support, Plaintiff states the following allegations: "[e]ach Defendant…made an agreement to act together by altering, destroying and excluding evidence of written report and video footage and then testifying to the contents of the evidence they tampered with and destroyed," all to allegedly "accomplish[] a conviction against the Plaintiff." (Document No. 3, p. 26).

In order to state a claim under § 1985, "the conspiracy must be motivated by 'some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action.'"  <u>Trerice v. Summons</u>, 755 F.2d 1081, 1085 (4th Cir. 1985) (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 91 (1971)).  Here, Plaintiff does not allege any racial or class-based

discriminatory animus that motivated Defendants' conduct. For this reason, the undersigned respectfully recommends that the § 1985 claim be dismissed.

**Claim Ten: State Law Claim for Fraud**

Plaintiff's tenth claim for state law fraud seems to be alleged against Defendants Dillard, Campbell, and the Iredell County Sheriff's Office. For the reasons mentioned in the party-specific section above, Defendants Campbell and the Iredell County Sheriff's Office are not liable for this claim. See supra pp. 10, 13. With respect to Campbell, there are simply insufficient factual allegations against him to make him liable on any claim. Id. at p. 10. And, with respect to the Iredell County Sheriff's Office, Plaintiff has not alleged the requisite waiver of governmental immunity on the fraud claim through any purchase by the Iredell County Sheriff's Office of liability insurance. Id. at p. 13.

With respect to Defendant Dillard in his individual capacity, though, the analysis is different. The elements of a fraud claim in North Carolina are: (1) "[f]alse representation or concealment of a material fact"; (2) "reasonably calculated to deceive"; (3) "made with intent to deceive"; (4) "which does in fact deceive"; and (5) "resulting in damage to the injured party." Hogan, 519 F. Supp. at 289 (quoting Head v. Gould Killian CPA Grp., P.A., 812 S.E.2d 831, 837 (N.C. 2018)). As Dillard mentions in his brief, it is not clear what damage Plaintiff suffered, based on the timeline of the representations. Indeed, as Dillard correctly points out, "Plaintiff did not request footage from the Iredell County Sheriff's Office until after the conclusion of the first trial [the information was requested in 2020, and the first trial concluded in 2019]." (Document No. 25, p. 17); see (Document No. 3, p. 18). And, Plaintiff alleges that he received the footage on the day the second trial began. (Document No. 3, p. 2). So, the damage that he alleges in support of his fraud claim – that he "suffered through three separate criminal trials as a result of the

misrepresentation by the Defendants" about whether the Iredell County Sheriff's Office was in possession of the footage – could not, based on the timeline, have affected the number of trials Plaintiff endured.  Id. at p. 27.  Therefore, lacking the requisite allegation of damage, the undersigned respectfully recommends that the fraud claim be dismissed.

**Claim Eleven: North Carolina Constitutional Claim**

It is not entirely clear what kind of claim Plaintiff is attempting to state in the section for the eleventh claim.  Nonetheless, the undersigned will construe this claim as a claim for violation of the North Carolina Constitution against the "[l]aw [e]nforcement Defendants."  (Document No. 3, p. 27).  The contours of this claim are not clear, nor are the specific Defendants that Plaintiff is seeking to sue.  "To assert a constitutional claim under the North Carolina Constitution, a plaintiff must have no adequate state remedy…to provide relief for the injury."  Dean, 2023 WL 5281945, at *13 (internal quotations and citations omitted).  "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim."  Id. (quoting Collum v. Charlotte-Mecklenburg Bd. of Educ., 2010 WL 702462, at *3 (W.D.N.C. Feb. 23, 2010)).  Since the undersigned is recommending that the malicious prosecution state law claim against Defendants Johnson and Hillard survive dismissal, the undersigned respectfully recommends any purportedly alleged claim under the North Carolina Constitution be dismissed.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "Motion To Dismiss Plaintiff's Amended Complaint On Behalf [Of] Defendants Iredell County District Attorney's Office, Burris, Kirkland, Iredell County Clerk Of Superior Court, Nixon,

John/Jane Does Unknown Employees Of Clerk's Office, Mahoney, And John/Jane Does Unknown Employees Of District Attorney's Office"  (Document No. 21) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that "Defendants Adam Dillard, Iredell County, Iredell County Sheriff's Office, Ron Hillard, Darren Campbell, Eric Green, Matt Campbell, Gary Mykinsen, And John Williams' Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6), And Rules 12(b)(1), (2), (4) And (5), And Rules 4(c)(1) And 4(m)" (Document No. 24), the "Motion To Dismiss By Defendants Statesville Police Department, Unknown Employees Of Statesville Police Department, Officer K. Johnson, Captain Tom Souther, And City Of Statesville" (Document No. 27), and "Motion To Dismiss Plaintiff's Amended Complaint On Behalf Of Defendants Wilson Security Service, Inc., Patsy Allen And Danny Liles" (Document No. 31) be **GRANTED in part and DENIED in part** as follows:

- Count I: First Amendment § 1983 claim – <u>grant</u> dismissal

- Count II: Unlawful Arrest and False Imprisonment § 1983 claim – <u>deny</u> dismissal only as to Hillard and Johnson in their individual capacities;  <u>grant</u> dismissal as to all other Defendants

- Count III: § 1983 <u>Brady</u> claim – <u>grant</u> dismissal

- Count IV: § 1983 Excessive force claim – <u>deny</u> dismissal only as to Hillard and Johnson in their individual capacities;  <u>grant</u> dismissal as to all other Defendants

- Count V: State law malicious prosecution claim -- <u>deny</u> dismissal only as to Hillard and Johnson in their individual capacities;  <u>grant</u> dismissal as to all other Defendants

- Count VI: State law abuse of process claim – <u>grant</u> dismissal

- Count VII: Assault claim against Defendant Liles – <u>deny</u> dismissal

31

- Count VIII: <u>Monell</u> claim – <u>grant</u> dismissal

- Count IX: § 1985 claim – <u>grant</u> dismissal

- Count X: State law fraud claim – <u>grant</u> dismissal

- Count XI: North Carolina Constitution claim – <u>grant</u> dismissal

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005);  <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Id.</u>  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: January 8, 2024

David C. Keesler
United States Magistrate Judge

32