

FILED
Statesville, NC

JUL 23 2025

Clerk, US District Court
Western District of NC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00095-KDB-DCK

| GLENN S. MILLSAPS, JR.<br>PLAINTIFF,<br><br>v.<br><br>DANNY LILES and DEPUTY RON HILLARD,<br>DEFENDANTS. | **Plaintiff's Sur-Reply Opposing Defendants Hillard's Improper Invocation of the Sham Affidavit Rule** |
|---|---|

COMES NOW the Plaintiff Glenn S. Millsaps, Jr, to submit the following:

**Introduction** —If Hillard can weaponize prior discrimination filings to demean a litigant, then what's left of the Ku Klux Klan Act's purpose? Hillard stated in Document 178 the "Plaintiff has a history of claiming to be the victim of racial discrimination". He does not mention that the U.S. EEOC issued not one but **two** cause determinations letters[1] finding discrimination in Plaintiff's favor in one of the very cases he cites in Document 178. Hillard does not talk about Plaintiff's clean criminal history back ground. He does not sound off that Plaintiff has filed more civil rights complaints on behalf White citizens than any other race or national origin. He does not sound off Plaintiff filed a complaint under the Uniform Services Employment and Reemployment Rights Act for a White man who nearly lost everything because of an employer's discrimination against him. He does not sound off Plaintiff has been stopped by police over 100 times in his life. He does not sound off that Plaintiff has been stopped by police for having a broken tail light when the tail light was not broken and did not file suit. He does not sound off that Plaintiff has been subjected to two separate field sobriety tests despite not having consumed any alcohol or drugs. He simply relies on two public records of prior filings to assert that Plaintiff "likes to claim racial victim" — a conclusory leap unsupported by any evidence. He ignores the purpose of the Klan Act. Defendant's disrespectful response toward Plaintiff echoes the same animus Hillard displayed on July 24, 2019. White and Black citizens who read

[1] A *cause determination* is issued by the U.S. Equal Employment Opportunity Commission (EEOC) when, after investigating a discrimination charge, the agency finds *reasonable cause* to believe that unlawful discrimination occurred.

Hillard's reply were aghast—completely stunned by its tone, its dismissiveness, and its clear hostility towards people who stand up for their rights. Defendant offers no evidence that Plaintiff is "playing victim." To the contrary, Plaintiff is the victim. The evidentiary record includes sworn declarations, contemporaneous reporting, and corroborating witness statements that demonstrate Plaintiff's account is consistent, credible, and supported. Defendant omitted the video while still relying on its demonstrably false 15 second arrest content. So, who's playing the victim? Hillard isn't defending facts — he's defending fallout. He's become the collateral damage of a Sheriff's Office more invested in covering inconsistencies than confronting them. Plaintiff, here, a highly decorated United States Marine, will not dignify Attorney Wood's inappropriate reference to the Marine Corps with a response because Wood has never earned the right to define 'Marine ethos.' That is not his place. That uniform is earned through blood, sacrifice, and honor—not twisted in a courtroom to smear a veteran's name while representing a client who's told multiple conflicting stories. Second, Plaintiff will not fully entertain Attorney Wood's or Deputy Hillard's thinly veiled attempts to discredit him by referencing prior discrimination cases. Those cases reflect Plaintiff's unwavering commitment to advancing justice—not just for Black Americans, but for all his brothers and sisters across the world regardless of one's race or national origin. Asserting one's rights is a Marine's duty especially when it involves violations of our constitution. That I stood up in the past only reinforces why I stand up now.

## I. Hillard's Multiple Versions Reveal Retaliatory Motive — With or Without him admitting he said the "Were you told to leave last week" Question

Plaintiff incorporates his declaration submitted with his opposition in this response. The record is stacked with reliable evidence. In one of Hillard's many fabricated versions, Hillard claims he was **only** told Plaintiff had been asked to leave before the arrest. In another version, his own report states he says was **told** prior to the arrest by Burris and Liles separately that Plaintiff was demanding to see the ADA and raising his voice. In another version, he says he did not speak to Burris until after the arrest. In another version, he claims Burris spoke to him **first** and Burris **told him** before the arrest she told the Plaintiff to leave. But in his latest federal discovery

version, he says , he asked Burris did you tell this gentleman to leave. Despite which fabricated version this court accepts, if Hillard only knew Plaintiff had been told to leave, then he arrested without knowledge of any unlawful conduct. Whether Hillard knew only that Plaintiff had been told to leave, or knew Plaintiff sought access to the ADA, neither version establishes probable cause. If the latter is true — and Hillard learned it from Plaintiff before the arrest — then arresting Plaintiff mid-request suggests retaliation, not enforcement.

## II. Hillard learning from Patsy Allen Patsy was needed is not enough to justify Criminal behavior

The 4th Circuit said point blank, "It is not enough that Fulford first began to suspect criminal activity when a man that he intended to help approached him in dark clothing."[2] Defendant Hillard's reliance on Patsy Allen's statement that he was 'needed' offers no lawful predicate for detention or arrest. It reflects procedural vagueness, not objective fact. (Id.) In other words, the 4th Circuit is sounding off that just because Deputy Scott Fulford starts feeling suspicious — say, because someone is wearing dark clothing and walks toward him — that alone isn't a legally valid reason to assume criminal behavior or to detain someone. "Officers must consider the totality of the circumstances and, in doing so, must not overlook facts that tend to dispel reasonable suspicion."[3] Hillard learning from Pasty Allen he was needed is weak.

## III. Defendants Improperly Seek to "Sham" the Plaintiff's Declaration Through a Final Reply—Not a Proper Rule 56 Motion to Strike—After Gaming the Record and Suppressing Corrections Under Rule 30(e)

Deputy Hillard in trial narrated a video testifying "No ma'ma, I spoke to her (Burris) afterward. Hillard flipped this in federal discovery to argue arguably probable cause and lied and said he spoke to Burris **before** the arrest. (Doc. 92 parg. 82) Plaintiff expands on this in his opposition

---

[2] *Wingate v. Fulford*, 984 F.3d 301, 310 (4th Cir. 2021)
[3] United States v. Drakeford, 984 F.3d 301, 310 (4th Cir. 2021)

and clarifies Hillard falsehood through his declaration. A point Defendant's counsel swerved by in the deposition. Defendants also—unsurprisingly—did not submit the tampered video into the record[4]. The plaintiff did. It is preposterous for Hillard to want Plaintiff's declaration excluded on the basis of purported contradictions by Plaintiff. Hillard himself in a May 8, 2025 affidavit subtly embedded his false narrative of a "15-second arrest" by asserting, "I arrested Plaintiff when he was inside the District Attorney's Office." This implication—that the arrest occurred entirely within the truncated footage—was not explored during Plaintiff's deposition. Plaintiff's declaration lawfully expanded that implication by clarifying the actual sequence of events omitted or distorted in the video Defendants withheld and falsely denied possessing. Defendants now attempt a post-hoc pitch to strike Plaintiff's sworn declaration by invoking the so-called sham affidavit doctrine based on the gamesmanship they orchestrated. <u>This is a tactic both procedurally improper and substantively meritless.</u> It is Defendants, not Plaintiff, who manipulated the factual record. They conducted a tightly knitted deposition, discouraged Plaintiff from making Rule 30(e) corrections off the record, and filed their summary judgment motion <u>before</u> Plaintiff's correction period expired. Defendants couch in their reply brief—filed after Plaintiff's declaration—to argue the very contradictions they engineered. Plaintiff hereby preserves his opportunity to object to the deposition line by line. There are numerous technical problems with the deposition and Plaintiff has pointed those out to the court reporter but she refuses to fully engage.

Nonetheless Defendants strategy is barred. The 4th Circuit has squarely held that when a party raises an objection to a declaration for the first time in a reply brief—without filing a separate motion to strike—<u>the objection is deemed waived</u>[5]. The same procedural trap is being sprung

[4] Defendants' failure to submit the video—combined with their strategic deployment of Hillard's vague affidavit—reflects a classic attempt to control the narrative by selectively omitting critical facts. Courts have consistently rejected efforts to weaponize summary judgment through concealment or distortion of the evidentiary record. **See *Scott v. Harris*, 550 U.S. 372, 380 (2007)** (noting that summary judgment should not be granted where a reasonable jury could disbelieve the movant's version of events, especially where video evidence is in dispute)

[5] Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) The court held a party waives an argument by failing to present it in its opening brief, and even a "passing shot" is not enough—the argument must be developed. The opinion also rejects attempts to resurrect an argument in a reply brief.

here. Defendants had the last word in reply and now ask the Court to prevent Plaintiff—a pro se litigant—from clarifying critical facts they want off the record.

**III. Plaintiff Is an Outlier Among Pro Se Litigants — Others Seeking ADA Access Were Not Arrested**

Hillard does not point to one inconsistencies Plaintiff made in comparing the inconsistencies of Hillard, Liles and Burris. Hillard admitted other pro se litigants see the ADA all the time. Hillard admits he's never arrested another pro se litigant asserting access to the ADA. He acted on secondhand claims of volume, not firsthand observation. Plaintiff was asserting a lawful right, not disrupting proceedings.

**CONCLUSION**

Defendants failed to file a timely motion to strike or object under Rule 56(c)(2), and raised their sham affidavit argument only in reply. This tactic is procedurally improper and waived. See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017); *A Helping Hand, LLC v. Baltimore Cty.*, 515 F.3d 356, 369 (4th Cir. 2008); *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006).

Moreover, the Fourth Circuit permits disregard of an affidavit only where it 'flatly contradicts' deposition testimony *without explanation. Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001). Plaintiff's declaration is consistent with all of his declarations, and any differences are explained and supported by new evidence (e.g., video content, public records).

Respectfully submitted,

/s/Glenn S. Millsaps, Jr.,

## CERTIFICATE OF SERVICE

I, Glenn S. Millsaps Jr., hereby certify that on July 21, 2025, I served copies of the certificate of service to defendants counsel by United States Mail to the addresses listed below. These filings will also be available for review upon upload by the Clerk of Court:

1. Plaintiff's Sur-Reply Opposing Defendant Hillard's Improper Invocation of the Sham Affidavit Rule
2. Rebuttal to Defendant Liles' Reply Brief and Sham Affidavit Claim
3. Plaintiff's Motion to Strike Defendant's Impertinent and Prejudicial Statement
4. Plaintiff's Motion to Strike Impertinent and Prejudicial Statement in Document 178
5. Plaintiff's Motion for Judicial Notice of Contradictory Statements by Deputy Ron Hillard
6. Brief in Support of Plaintiff's Motion for Judicial Notice
7. Plaintiff's Motion to Expand the Page Limit for Reply Filings
8. Plaintiff's Motion for Extension of Time to File Reply Briefs

**Served upon:**

Martineau King PLLC P.O. Box 241 Charlotte, NC 28224

Bradley Wood / James R. Morgan Jr. Womble Bond Dickinson (US) LLP One West Fourth Street Winston Salem, NC 27101

Respectfully submitted,

**/s/ Glenn S. Millsaps, Jr.**
Plaintiff, Pro Se
22344 Burton St.
Canoga Park, CA 91304-3805
Date: July 21, 2025