# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:22-CV-00095-KDB-DCK

| | |
|---|---|
| **GLENN S. MILLSAPS JR.,** | |
| Plaintiff, | |
| v. | **ORDER** |
| **DANNY LILES AND RON HILLARD,** | |
| Defendants. | |

**THIS MATTER** is before the Court on Defendants' Motions for Summary Judgment (Doc. Nos. 162, 164). The Court has carefully considered this motion, the parties' briefs and exhibits and oral argument on the motion from Plaintiff (appearing pro se) and Defendants' counsel on August 7, 2025. For the reasons discussed below, the Court will **GRANT** the motions.

This long running dispute stems from Plaintiff's arrest in July 2019 for refusing to leave the Iredell County District Attorney's ("DA") office, where he was trying unsuccessfully to reschedule a hearing on a citation for a seat belt violation. It is important to understand what is and is not before the Court with respect to the pending motions. The Court well understands that Plaintiff passionately believes that he should have been allowed to reschedule his hearing without engaging an attorney and that any policy otherwise is wrong. Relatedly, he believes that he should not have been told to leave the DA's office when he tried to reschedule his hearing. However, none of those issues are now before the Court. Instead, the Court must decide if a reasonable jury could find the two remaining individual Defendants, Danny Liles and Ron Hillard, liable for their conduct in connection with his arrest. Because Plaintiff's own testimony, much of which he

1

repeated at oral argument, confirms that Liles did not commit assault or battery as a matter of law and Deputy Hillard had probable cause to arrest him and did not use excessive force in doing so, the Court finds that the Defendants are entitled to Summary Judgment on Mr. Millsaps' claims.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land*, 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land*, 36 F.4th at 252 (quoting

2

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, inter alia, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land*, 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). And "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *see also Tankesley v. Vidal*, No. 1:21-CV-I448, 2023 WL 4273763, at *2 (E.D. Va. June 29, 2023) ("It is … well-settled within the Fourth Circuit that 'where a party submits an affidavit that is inconsistent with a witness's deposition testimony, the contradictory affidavit is disregarded for purposes of summary judgment.'").

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (citation modified). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits."

3

*Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff urges the Court to find there are disputed facts and questions as to the credibility of the Defendants that preclude summary judgment. However, in considering the pending motions, the Court has relied only on the facts described below, which is the version of the facts as testified to by Plaintiff or which cannot be reasonably disputed.

Plaintiff failed to attend his July 17, 2019, scheduled hearing in traffic court for a seatbelt violation because of a hamstring injury. After missing his court date, Plaintiff attempted to find out how to reschedule the "call and fail" with the Clerk of Court's office and the DA's office, but was unsuccessful. Although no one from the DA's office advised Plaintiff that he could come to the office to reschedule his hearing, (Doc. No. 163-1, Deposition of Glenn Millsaps, Jr. ("Dep") at 38:7-11, 43:23, 70:3-9), on July 19, 2019, Plaintiff went to that office, located in the Hall of Justice Annex in Statesville, North Carolina, to do so. At the DA's office, Plaintiff spoke with Kathleen Burris, the receptionist, who told Plaintiff that he could not reschedule his "call and fail" at the DA's office and told him to leave. (Dep. at 45:15-47:4).

After the Clerk of Court's office and a security guard suggested that Plaintiff should "return to the DA's office because that's where you have to speak to our prosecutor in order to reschedule," (Dep. at 54:1-11), he returned to the DA's office on Wednesday morning, July 24, 2019, despite having previously been told that they would not reschedule his hearing there. (Dep. at 49:17-24;

4

50:15-16; 52:6-12, 55:9-57:8). Upon Plaintiff walking into the DA's office lobby, Ms. Burris told him that she had been instructed to call the police if he returned. (Dep. at 57:14-21, 132:11-17). Burris also told him "to leave and go pay the fine or hire an attorney." (Dep. at 60:20-25, 97:10-25, 134:25-135:3).

Plaintiff then left the DA's office and spoke with defendant Danny Liles, a Wilson Security Company security guard, in the hallway. Plaintiff told Liles that he had come to speak with an ADA to reschedule his hearing, but that Ms. Burris had told him that he could not reschedule his "call and fail" at the DA's office and that she had "instructed [Plaintiff] to leave because [Plaintiff] was not an attorney, or to pay the fine." Plaintiff testified that Liles told him: "Well, if you were told to leave, then you need to leave." (Dep. at 64:5-67:16; 134:7-136:7; 142:1-12; 156:19-157:3) According to Plaintiff, he "stood his ground," reasserted his right to speak with a DA, and told Liles that "he [Liles] had no reason to tell me to leave." (Dep. at 135:16-19, 144:8-20). Again, Liles "demanded" that Plaintiff leave. (Dep. at 141:6-142:12).

Despite Burris and Liles having asked Plaintiff to leave, he did not. (Dep. at 70:15-22). Believing that being told to leave was "clearly the wrong instruction," and that "someone telling me to leave for no apparent reason is not a lawful order," (Dep. at 93:23-94:1; 154:4-20), Plaintiff turned from Liles and started to move towards the DA's office. (Dep. at 264:15-22). As Plaintiff did so, Liles grabbed him by the arm in an effort to stop him. However, Plaintiff pulled away, told Liles not to touch him and re-entered the DA's office. (Dep. at 73:13-74:24, 264:15265:6). Liles followed Plaintiff into the DA's office, where he told Plaintiff to leave once more, and threatened to summon a Sheriff's Deputy if Plaintiff refused to leave. Plaintiff responded, "Well, then just go ahead and get a deputy." (Dep. at 149-20-150:23; 157:24-158:15; 161:13-161:22).

5

At that point, another Wilson security guard went next door to Courtroom C where traffic court was being held and asked Deputy Ron Hillard, the courtroom bailiff, to come to the DA's office. (Doc. No. 165-3, Affidavit of Ron Hillard ("Hillard Aff.") at ¶9). Hillard left the courtroom (temporarily stopping traffic court, which needed a bailiff to proceed), *id*., and walked to the DA's office, where he spoke to Plaintiff. (Hillard Aff., ¶10; Dep. at 160:25-161:11; 163:11-23). According to Plaintiff, Hillard asked him: "Are you an attorney?"; "Were you told to leave last week?"; "What was your missed appearance?"; "Were you told to leave?" (Dep. at 166:7-18). Plaintiff stated both in his deposition and at oral argument that he told Hillard that he had been asked to leave the DA's office, arguing that: "I have a right to represent myself." ; "I'm here to reschedule."; "I was told to come back."; "You have not witnessed any crime." (Dep. at 166:20-23).

Hillard then asked Plaintiff to leave and told Plaintiff that if he did not leave, Plaintiff would be "placed under arrest." (Dep. at 166:24-167:11; 168:20-24; 169:10-15; 171:4-7; 274:15-275:17; Hillard Aff., at ¶11). Plaintiff made no movement to leave nor took any action that suggested he intended to comply with Hillard's order. (Dep. at 172:13-25; 299:24-25). Instead, Plaintiff told Hillard that Hillard had not seen or witnessed anything for which Hillard could arrest him. (Dep. at 167:24-168:3, 276:5-16, 282:4-19) ("So Deputy Hillard could not tell me to leave legally."). At that point, Hillard told Plaintiff that he was under arrest and ordered Plaintiff to step out of the DA's lobby and into the hallway, to turn around, and to place his hands behind his back. (Dep. at 173:22-174:5; Hillard Aff., at ¶11). Hillard then handcuffed Plaintiff. (Dep. at 183:4-9, 229:17-21, 230:5-9; Hillard Aff., at ¶15).

Plaintiff told Hillard that the handcuffs were put on incorrectly and were too tight on his wrists. (Dep. 174:7-9, 186:18-187:2, Ex.3, p.3; Hillard Aff., at ¶12). At the time Hillard arrested

6

Plaintiff and handcuffed him, Hillard was the sole law enforcement officer in the building. (Hillard Aff., at ¶¶6, 12). Hillard testifies that he did not loosen the handcuffs at that time due to officer safety concerns because he feared that unlocking the handcuffs in order to loosen them could place him, alone and without backup, at a tactical disadvantage. (Hillard Aff., at ¶12). Instead, Hillard advised Plaintiff that other officers would soon arrive to take custody of him. (Hillard Aff., at ¶16). Hillard radioed his supervisor and requested support in handling Plaintiff. (Hillard Aff., at ¶16). Hillard did not double lock the handcuffs, again because he anticipated that other officers would soon arrive to take control over Plaintiff. (Hillard Aff., at ¶15).

Within a few minutes, four other court Bailiffs arrived at the Hall of Justice Annex and took custody of Plaintiff. (Dep. at 175:24-176:5; Hillard Aff., at ¶¶18-19). Plaintiff told these arriving Bailiffs that the handcuffs were put on wrong, that they were too tight, and that they were not double locked. (Dep. at 176:10-15, 187:3-6). One of the other Bailiffs adjusted the handcuffs, but did not double-lock the handcuffs or adjust them to Plaintiff's satisfaction. (Dep. at 180:25-181:15, 181:23-182:9, 187:9-14, 192:17-20). However, there is no dispute that at that point a different deputy had taken charge of the Plaintiff. (*See* Doc. No. 75 at 69; Hillard Aff., at ¶19).

Bailiffs other than Hillard, escorted Plaintiff out of the Hall of Justice Annex, while Hillard followed behind them carrying Plaintiff's briefcase. (Dep. at 187:20-189:15; Doc. No. 75 at 69; Hillard Aff., at ¶21). He was then taken to a Statesville Police Department patrol car. (Dep. at 197:25-199:21). Plaintiff testified that he pleaded with the other Bailiffs to double-lock the handcuffs, but that they did not do so. (Dep. at 201:12-202:2). Ultimately, after Plaintiff began "kicking and screaming," Dep. at 203:2-11), the other Bailiffs removed him from the patrol car, re-adjusted the handcuffs and double-locked them, and placed him back into the patrol car. (Dep. at 203:2-15, 204:22-205:2; Doc. No. 75 at 69). After the other Bailiffs placed Plaintiff into Officer

Johnson's patrol car, Hillard went back inside the Hall of Justice Annex to resume his duties as the traffic court bailiff. (Hillard Aff, at ¶24).

While sitting in the patrol car, Plaintiff told the officer that the handcuffs were still on wrong (despite their having been adjusted at least twice by officers other than Hillard). The officer "didn't do anything," and instead told Plaintiff to wait until they got to the jail at which point he would adjust the handcuffs. (Dep. at 203:17-205:7). At the jail, the officer removed the handcuffs, put them back on Plaintiff, and double-locked them. (Dep. at 205:8-17). Plaintiff was then taken before Magistrate Mike Nethken, to whom Plaintiff explained his version of the events that had transpired. (Dep. at 208:17-213:25). Magistrate Nethken issued a Magistrate's Order charging Plaintiff with second degree trespassing in the DA's office. (Dep. at 218:2-219:10) and then released him on the condition that he have "No contact with the DA's office. No contact with Iredell County DA by telephone." (Dep. at 219:11-221:23).

After going home and sleeping, Plaintiff states he noticed a blood stain on the cuff of his left shirt sleeve, with an approximate overall area the size of a dime. (Dep. at 227:16-229:9). Plaintiff also states that there was some bruising to his wrists. (Dep. at 230:18-20). Plaintiff admits he does not know when any breaking of the skin happened – whether it was when he sat down in the patrol car or before then. (Dep. at 229:11-230:16). Plaintiff did not take any photographs or otherwise document any bruising or bleeding of his wrist(s) and has not sought any medical attention or care for any injury he claims he sustained on July 24, 2019. (Dep. at 230:21-231:15, 234:2-236:18, 239:18-244:12).

Plaintiff, represented by counsel, was tried and convicted of second-degree trespassing in Iredell County Criminal District Court in a bench trial held on November 15, 2019. Plaintiff appealed his conviction to Iredell County Criminal Superior Court, where he was re-tried in June

8

Case 5:22-cv-00095-KDB-DCK   Document 196   Filed 08/11/25   Page 8 of 18

2021, which resulted in a hung jury. In his third trial, he was acquitted by the jury. In both of his jury trials, he made motions to dismiss at the close of the State's evidence. In both cases, the presiding Judge denied his motions to dismiss and allowed the case to go the jury. (Dep. at 224:3-227:2).

Plaintiff filed this case in July 2022 and an Amended Complaint in October 2022. The Court dismissed all of Plaintiff's claims, except for those remaining against the Defendants here, in March 2024. Doc. No. 82. In February 2025, Plaintiff filed a second Amended Complaint only against Liles and Hillard. Doc. No. 122. Against Liles, Plaintiff asserts a single claim for Assault under North Carolina law. Plaintiff's three claims against Deputy Hillard include: False Arrest under 42 U.S.C. § 1983 and North Carolina Law, First Amendment Retaliatory Arrest under 42 U.S.C. § 1983 (Violation of First and Fourteenth Amendments) and Excessive Force under 42 U.S.C. § 1983 (Fourth Amendment Violation). *Id*. In May 2025, Liles and Hillard filed their Motions for Summary Judgment, which have been fully briefed, including a rebuttal and surreply by Plaintiff. On August 7, 2025, the Court held an oral argument at which Plaintiff appeared and represented himself and the Defendants were represented by counsel. The motions are ripe for the Court's ruling.

### III. DISCUSSION

#### A. Claims Against Mr. Liles

Plaintiff's lone cause of action against Liles alleges that Liles assaulted Plaintiff under North Carolina law when Liles "grabbed his arm" as Plaintiff was going back to the DA's office (after being told to leave by both Burris and Liles). As described in *Hensley v. Suttles*, 167 F. Supp. 3d 753, 764 (W.D.N.C. 2016), *aff'd sub nom. Hensley on behalf of N. Carolina v. Price*, 876 F.3d

9

573 (4th Cir. 2017), North Carolina looks to the common law for the definition of the intentional tort of assault:

> North Carolina follows common law principles governing assault and battery. An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow. The interest protected by the action for battery is freedom from intentional and unpermitted contact with one's person; the interest protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person.

(quoting Dickens v. Puryear, 302 N.C. 437, 445, 276 S.E.2d 325, 330 (1981)). The elements of assault, therefore, are: (1) intent, (2) offer of injury, (3) reasonable apprehension, (4) apparent ability, and (5) imminent threat of injury. *Hawkins v. Hawkins*, 101 N.C.App. 529, 533, 400 S.E.2d 472, 475 (1991) *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). "The gist of an action for assault is apprehension of harmful or offensive contact." *Morrow v. Kings Department Stores, Inc.*, 57 N.C. App. 13, 19, 290 S.E.2d 732, 736, *disc. review denied*, 306 N.C. 385, 294 S.E.2d 210 (1982). "The display of force or menace of violence must be such to cause the reasonable apprehension of *immediate* bodily harm." *Dickens*, 302 N.C. at 445, 276 S.E.2d at 331 (emphasis in original, citation and quotation marks omitted).

Plaintiff's testimony and admissions during oral argument make clear that he was not fearful of imminent injury from Liles. Instead, he says that he was upset at Liles' touching and forcefully told Liles not to touch him, but did not fear physical harm. Rather, he was "pained in my head" by feeling that he was being told to leave a place where he believed he had a right to be. While the Court does not minimize the sincerity of Plaintiff's feelings, he was not "placed in

10

apprehension of harmful or offensive contact" and did not suffer an "assault" under North Carolina law.[1] Therefore, the Court will grant summary judgment for Liles on Plaintiff's claim.

    B.    **Claims Against Deputy Hillard**

        1.    **Probable Cause**

The core requirement of all of Plaintiff's claims against Deputy Hillard is that he establish that Hillard violated the constitution in effecting his arrest. And he did not. As found by the independent state court magistrate and two North Carolina Superior Court judges, Deputy Hillard had probable cause (or the even higher standard that a jury could find guilt beyond a reasonable doubt with respect to the trial judges) to cite Plaintiff for second degree trespassing. In the absence of a wrongful arrest and lacking any causative evidence of "excessive force" against Hillard (even though Plaintiff unfortunately says he was injured by the use of handcuffs by multiple officers), Plaintiff's claims fail both on the merits and are bared by Hillard's qualified immunity. Therefore, Hillard is entitled to summary judgment.

In order to bring a claim for unlawful arrest, under either federal or state law, a plaintiff must allege that the arrest was made without probable cause. *See Miller v. Prince George's Cty., MD*, 475 F.3d 621, 627 (4th Cir. 2007); *Myrick v. Cooley*, 91 N.C. App. 209, 213 (1988). Probable cause requires the Court to review the totality of the circumstances and "is informed by the 'contours of the offense' at issue." *See Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (quoting

---

[1] Moreover, at the time of the incident, Liles was working as a private security guard who was governed by North Carolina's Private Protection Services Act, N.C. Gen. Stat. § 74C-1 *et al*. The Act authorizes licensed security guards to protect "patrons and persons lawfully authorized to be on the premises" such as the employees of the DA's office in this instance. While the Court need not and does not decide the full scope of the authority of a private security guard with respect to allegations of assault or battery, Liles' limited conduct alleged here appears to be consistent with the authority granted by the statute (which allowing an action for common law assault based on the same conduct would undermine).

*Rogers v. Pendleton*, 249 F.3d 279, 291 (4th Cir. 2001)). In North Carolina, the elements of second-degree trespass are met when a person:

> without authorization…enters or remains on any of the following: (1) On premises of another after the person has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person. (2) On premises that are posted, in a manner reasonably likely to come to the attention of intruders, with notice not to enter the premises. (3) On the curtilage of a dwelling of another between the hours of midnight and 6:00 A.M.

N.C. Gen. Stat. § 14-159.13.

Probable cause exists if the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person ... in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36.

"In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer at the time of the arrest." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). "Probable cause requires more than 'bare suspicion,' but requires less than evidence necessary to convict." *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998). Also, reasonable law enforcement officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991). Probable cause is a "commonsense, nontechnical" concept that deals "with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal citations omitted).

While Plaintiff's third trial resulted in an acquittal, the Court finds that it cannot be reasonably disputed that Plaintiff's arrest was supported by probable cause. Plaintiff acknowledges

that he told Deputy Hillard that he had been told to leave the DA's office and then remained there after Hillard notified him that he had to leave. Indeed, Hillard informed Plaintiff that he would be arrested if he did not leave and Plaintiff still chose not to comply with the request. Therefore, Hillard had probable cause to arrest Plaintiff for second degree trespassing. *See District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.").

Further, the finding of probable cause by the magistrate judge and later the trial judges dooms Plaintiff's claims. "Once a pretrial seizure has been rendered reasonable by virtue of a probable cause determination by a neutral and detached magistrate, the continuing pretrial seizure of a criminal defendant . . . is reasonable." *Taylor v. Waters,* 81 F.3d 429, 435–36 (4th Cir.1996). "A magistrate's determination of probable cause should be paid great deference by reviewing courts," and should not be disturbed if "sufficient information [was] presented to the magistrate to allow that official to determine probable cause." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation modified). As long as the magistrate had a substantial basis for concluding that probable cause for the arrest existed, "the Fourth Amendment requires no more." *Id*.; *United States v. Wilhelm*, 80 F.3d 116, 119 (4th Cir. 1996). There is no dispute that an officer explained the grounds for Plaintiff's arrest to the magistrate (and that Plaintiff took the occasion to make comments in his defense). Thus, the magistrate's finding of probable cause further establishes that Plaintiff's Fourth Amendment rights were not violated.[2] Accordingly, Deputy Hillard is entitled to summary

---

[2] Of course, the conclusion of two trial court judges that the charges against Plaintiff could go to the jury (that is, that there was enough evidence that a reasonable jury could find him guilty beyond a reasonable doubt) is even stronger evidence that the arrest satisfied the much lower standard of "probable cause."

13

Case 5:22-cv-00095-KDB-DCK    Document 196    Filed 08/11/25    Page 13 of 18

judgment on all of Plaintiff's Section 1983 claims to the extent they depend on his allegations of a false arrest.

### 2. Qualified Immunity

Also, even if the Court had found that Hillard lacked probable cause for Plaintiff's arrest (which he did not), it would find that Hillard has qualified immunity as to Plaintiff's Section 1983 claims. When, as here, a law enforcement officer is sued in his individual capacity, he is "entitled to invoke qualified immunity, which is ... immunity from suit itself." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011)). The doctrine balances two important values—"the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Fourth Circuit has stated:

> The basic rules of § 1983 [qualified] immunity are well known. Underlying the doctrine is a desire to avoid overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability. The concerns behind the immunity defense are especially salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances. The law thus shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights.

*Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994) (citations omitted); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In carrying out the qualified immunity analysis, a court's "first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct." *Winfield v. Bass*,

14

106 F.3d 525, 530 (4th Cir. 1997) (en banc). The court then engages in a two-step inquiry, asking "whether a constitutional violation occurred" and "whether the right violated was clearly established" at the time of the official's conduct. *Pearson*, 555 U.S. at 231; *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). Courts have discretion to take these steps in either order. *Id*.

As discussed above, the Court finds that a constitutional violation did not occur so it need only further address the second alternate question. A right is "clearly established" if "the contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). The inquiry into whether a right is clearly established must "be undertaken in light of the specific context of the case" and "not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 195 (2001).

It is not required, however, that a court previously found the specific conduct at issue to have violated an individual's rights. The unlawfulness of the officer's conduct need only be manifestly apparent from broader applications of the constitutional premise in question. Put differently, a right may be clearly established if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question. *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018); *A.G. v. Fattaleh*, No. 520CV00165KDBDCK, 2022 WL 2758607, at *8–9 (W.D.N.C. July 14, 2022).

With respect to his claims of false arrest, Plaintiff has not offered nor has the Court found any authority that would clearly establish that a reasonable officer would have known that there was no probable cause to arrest Plaintiff under the facts alleged. To the contrary, as discussed above, there is no dispute that Hillard had probable cause to arrest Plaintiff under the

circumstances. Therefore, Hillard is entitled to summary judgement based on qualified immunity for Plaintiff's Section 1983 claims based on "false arrest."

### 3. Excessive Force

Plaintiff's final claim under 42 U.S.C. § 1983 alleges that Deputy Hillard used excessive force in effecting his arrest in violation of the Fourth Amendment. The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 399.

Objective reasonableness means that the focus is not on the officer's subjective intent. Even "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397; *see also Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). However, "[i]n questioning the split-second decisions of police officers, [the Court] must avoid hindsight bias and try to place ourselves in the heat of the moment." *Stanton*, 25 F.4th at 233. Thus, to determine whether Plaintiff's claims can proceed, the Court must ask whether the officers' use of force was objectively reasonable in light of the facts and circumstances confronting them, viewed in the light most favorable to the Plaintiff, without regard to the officers' underlying intent or motivation. *Knibbs v. Momphard*, 30 F.4th 200, 214 (4th Cir. 2022). The Court must focus on

16

Case 5:22-cv-00095-KDB-DCK    Document 196    Filed 08/11/25    Page 16 of 18

"the totality of the circumstances" based on the "information available to the Officers 'immediately prior to and at the very moment [they used force to arrest the Plaintiff].' " *Id.*

First, in considering the circumstances here, the Supreme Court has stated that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In *Atwater*, the arrestee committed a seat belt violation punishable only by a fine. Nonetheless, the Supreme Court held that the Fourth Amendment does not forbid a warrantless arrest for such a minor violation. *Id.*; *see Pegg v. Herrnberger*, 845 F.3d 112, 118 (4th Cir. 2017) (holding that force used in arresting (and taking to the ground) a driver after a traffic stop was not excessive).

Here, Plaintiff's allegation of "excessive force" reflects his complaint that his handcuffs were too tight, which ultimately resulted in an injury to his wrists. Although the Court does not question the sincerity of the alleged injury, after having carefully reviewed the full record, the Court finds that a reasonable jury could not conclude that Hillard handcuffed Plaintiff using "excessive force." Rather, he did so in a normal, standard way, even though Plaintiff soon complained that the cuffs were too tight. Not long after Plaintiff was initially handcuffed by Hillard, he was turned over to the custody of other law enforcement officers, who in turn readjusted Plaintiff's handcuffs at least twice, but never to his satisfaction. Indeed, Plaintiff is unable to say when in the course of his detention he suffered the injury to his wrists (thus any finding of liability against Hillard personally could only be based on speculation). So, the Court concludes that no jury could reasonably find that Hillard's conduct was objectively unreasonable.

Moreover, as discussed above in connection with Plaintiff's false arrest claims, Hillard is entitled to qualified immunity for Plaintiff's claims based on excessive force. Plaintiff has

17

Case 5:22-cv-00095-KDB-DCK    Document 196    Filed 08/11/25    Page 17 of 18

suggested no authority which "clearly establishes" that Hillard's conduct was excessive nor has he presented evidence that could reasonably support a finding that Hillard acted with malice against Plaintiff. *See Jetton v. Caldwell County Board of Education*, 2007 WL 3015252 (N.C. App. August 7, 2007) ("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence"). Therefore, Hillard did not use excessive force in violation of the Fourth Amendment in arresting the Plaintiff and/or is entitled to qualified immunity, and Summary Judgment will be granted to Hillard on Plaintiff's claims.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions for Summary Judgment (Doc. Nos. 162, 164) are **GRANTED**;
2. The remaining pending motions in this matter are denied as moot; and
3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 11, 2025

Kenneth D. Bell
United States District Judge